STATE of Iowa ex rel. Dick CLEMENS, Polk County Sheriff, Ray A. Fenton, Polk County Attorney, City of Des Moines, an Iowa Municipal Corporation, and Richard C. Turner, Attorney General of Iowa, Appellee,

v.

TONECA, INC., an Iowa Corporation, Tony G. Nelson and Caroline Nelson, Appellants.

No. 59825.

Supreme Court of Iowa.

May 17, 1978.

Raymond Rosenberg of Rosenberg & Margulies, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., and Douglas R. Carlson, Asst. Atty. Gen., for appellee.

Considered by MOORE, C. J., and Le-GRAND, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

The question here is whether the trial court erred in permanently enjoining defendants from operating massage parlors in Iowa. The trial court relied on five separate grounds in entering its decree. We find these grounds do not support the injunction and therefore reverse.

Defendants Tony Nelson and Caroline Nelson operated two massage parlors in Polk County in leased premises through their corporation, defendant ToNeCa, Inc. One of the parlors was in Des Moines and the other outside the city limits.

This injunctive action was commenced in the name of the State on December 23, 1975, in an effort to close defendants' Des Moines massage parlor on several legal theories. Evidence was taken in January 1976 in support of a preliminary injunction, which was issued. In April 1976 the State amended its petition and added a request that defendants' parlor outside Des Moines also be closed.

Trial on the merits was held in May 1976. Testimony of four undercover vice officers

who had visited the parlors a total of six times between 1974 and 1976 was introduced. Their testimony is uncontroverted.

It showed each place of business consisted of a reception area, shower and bath facilities and several small rooms containing tables or beds. Massages were offered on the premises only.

Male patrons entering the reception area were met by a fully-clothed woman who explained the various massages and their prices. Seven massages, ranging in price from $18 to $75, were available. The massages differed in their duration, the amount of clothing worn by the masseuse, the patron's right to touch or massage the masseuse, and whether the massage was to be performed with the hands or with the breasts, legs and thighs. The more expensive massages included body painting and bubble baths.

The patron selected the massage he desired and paid for it in advance. He was shown pictures of the masseuses, fully clothed, and chose the one he wished to perform the massage. Then he was directed to shower and subsequently go to one of the private rooms for his massage.

The ordinary massage consisted of a thorough body rub, not including the genital area. At the conclusion of this procedure, the masseuse asked the patron if there was any area he wished massaged in particular and, if so, to point to it. If the patron pointed to the genital area, the masseuse then masturbated[1] him with her hands.

No evidence was offered of soliciting for sexual intercourse or engaging in sexual intercourse by the masseuses in defendants' premises. When the undercover officers requested intercourse, the masseuses refused, telling them it was against the law.

After hearing the evidence, the trial court granted the injunction on the following five grounds:

1. § 99.1, The Code, 1975, (now amended) which prohibited maintaining a place "used for the purpose of lewdness, assignation [or] prostitution  *  *  *."

2. §§ 724.1–724.3, The Code, 1975 (now repealed and replaced), which prohibited prostitution and lewdness (§ 724.1), soliciting (§ 724.2), and keeping a house of ill fame resorted to for prostitution or lewdness (§ 724.3).

3. § 17–69, Des Moines City Ordinance 8865, which regulates massage technicians and parlors under a permit system.

4. §§ 657.1 and 657.2(6), The Code, which proscribe public nuisances.

5. The asserted inherent power of a court of equity to enjoin conduct which it deems is damaging and offensive to the public interest.

Defendants were specifically ordered to close the two businesses involved in this case, to disconnect their telephones, and to cease advertising. The court also enjoined them permanently from operating a massage parlor or similar business anywhere in Iowa.

In this appeal the defendants challenge each ground of the court's decree and, in addition, the breadth of the injunction. Because we find no injunction should have been decreed, we do not decide the breadth issue.

I. *The ground under § 99.1, The Code, 1975.* At the time material here, § 99.1, The Code, provided in relevant part:

Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, [or] prostitution  *  *  * is guilty of a nuisance, and the building, erection, or place, or the ground itself, in or upon which such lewdness, assignation, [or] prostitution,  *  * is conducted, permitted, or carried on, continued, or exists and the furniture, fixtures,  *  *  * and movable property used in conducting or maintaining such

---

1.  As used herein this term is given a meaning which includes the stimulation, other than by coitus, of the genitals of another resulting in orgasm.  See Webster's Third New International Dictionary; Random House Dictionary of the English Language.

nuisance, are also declared a nuisance and shall be enjoined and abated as hereinafter provided.

Defendants contend the conduct in this case is not subject to injunction under this provision.

They point out the conduct did not constitute prostitution as defined at common law and as we previously defined it under statutes. In *State v. Willis*, 218 N.W.2d 921 (Iowa 1974), we observed that at common law prostitution was the act or practice of a female in offering her body to indiscriminate intercourse with men. We held this definition gave an ascertainable meaning to the term as used in § 724.2, The Code, 1973, which proscribed solicitation for prostitution.

Later, in *State v. Price*, 237 N.W.2d 813 (Iowa), appeal dismissed, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976), we held prostitution as used in § 724.1, The Code, 1973, had its common law meaning but that the statute was intended to outlaw and punish only sexual intercourse for pecuniary gain. We thus held the legislature intended a narrower definition of prostitution under the statute than existed at common law.

The provisions of § 99.1 and Code chapter 724 were the same at the times material here as they were in the 1973 Code.

In this case the State asks us to broaden the definition of prostitution for purposes of § 99.1 to include the sale of any sexual service, including masturbation. We must reject this request for two reasons.

First, we have no basis for holding the legislature had any different meaning in mind when it used the word in § 99.1 than it did in chapter 724. In *State ex rel. Faches v. N.D.D., Inc.*, 228 N.W.2d 191 (Iowa 1975), we used the same reasoning to hold the term lewdness in § 99.1 was vulnerable to a vagueness attack.

Second, the legislature was obviously aware of this definitional issue when it amended § 99.1 and redefined prostitution in recently revising the criminal code. It defined "prostitute" as a person "who sells or offers for sale his or her services as a partner in a sex act, or who purchases or offers to purchase such services * * *." § 725.1, The Code, 1977 Supp. It defined "sex act" to include sexual intercourse and certain sodomitic and homosexual activities, but the definition does not include masturbation by hand. § 702.17, The Code, 1977 Supp. In amending § 99.1, the legislature retained the proscription against prostitution without further defining the term. § 99.1, The Code, 1977. Thus, in broadening the definition of prostitution in the new code, the legislature obviously did not think the term had the same breadth in the repealed statutes. Moreover, even under the new definition the term does not reach the activity involved here.

We conclude the term "prostitution" as used in § 99.1, The Code, 1975, did not include the conduct shown here.

As to the § 99.1 prostitution and lewdness grounds this case then becomes indistinguishable from *State ex rel. Faches v. Wedelstedt*, 250 N.W.2d 64 (Iowa 1977). In that case the massage parlor operation was similar to the operations here. The only difference is that the parties stipulated no prostitution occurred on the premises in that case, whereas here we have found the uncontroverted activities do not constitute prostitution within the meaning of § 99.1. In *Wedelstedt* we also held an injunction could not issue on the basis of alleged "lewdness" because we had held that term in § 99.1 to be unconstitutionally vague in *State ex rel. Faches v. N.D.D., Inc.*, supra, at 193 ("Section 99.1 cannot provide a basis for enjoining undefined 'lewdness'.").

■ We do not think the State's position is enhanced by the statute's additional use of the undefined term "assignation". The meaning of "assignation" has not previously been decided by this court. However, the prevailing meaning recognized elsewhere is that it is synonymous with prostitution.

*State v. Levenburg,* 75 Mich.App. 90, 254 N.W.2d 797 (1977), and citations; *People v. Goldman,* 7 Ill.App.3d 253, 287 N.E.2d 177 (1972). It has also been defined as soliciting for prostitution or sodomy. *Connick v. Lucky Pierre's,* 331 So.2d 431 (La.1976). We have no basis for finding our legislature intended the term to include masturbation by hand or the other conduct involved here.

■ Courts are not free to pick undefined words from statutes and define them in a way to reach conduct which they disapprove. We have declined the invitation before in similar circumstances, and we do so again. See *State v. Wedelstedt,* 213 N.W.2d 652, 656 (Iowa 1973) ("No court under the guise of construction may extend, enlarge, or otherwise change the terms and meaning of a statute.").

■ Even though § 99.1 is not a criminal statute, it is penal and must be strictly construed. See *State v. McGraw,* 191 Iowa 1090, 1094, 183 N.W. 593, 595 (1921) ("Nothing can be read into it that is not plainly there.").

■ Because the conduct here did not involve prostitution or assignation and the term "lewdness" is fatally vague, the trial court erred in relying on § 99.1, The Code, 1975, in entering the injunction.

For a contrary result the State relies upon three Illinois cases, *Toushin v. City of Chicago,* 23 Ill.App.3d 797, 320 N.E.2d 202 (1974), *Chicago v. Geraci,* 30 Ill.App.3d 699, 332 N.E.2d 487 (1975), and *Village of Bensenville v. Botu; Inc.,* 39 Ill.App.3d 634, 350 N.E.2d 239 (1976). See Annot., 80 A.L.R.3d 1020. Insofar as these cases would support a different result under § 99.1, they cannot be reconciled with our prior cases, and we decline to overrule them.

The trial court did not have the benefit of our 1977 *Wedelstedt* decision at the time of the decree here.

We hold the court erred in issuing the injunction on the basis of § 99.1, The Code, 1975.

■ II. *The grounds under chapter 724, The Code, 1975.* The trial court's reliance on 1975 Code chapter 724 is equally vulnerable under *State ex rel. Faches v. Wedelstedt,* 250 N.W.2d 64 (Iowa 1977). In that case we said the same kind of massage parlor operation could not be enjoined under § 724.1, The Code, 1975. This provision, as well as §§ 724.2, and 724.3, depends on the terms "prostitution" and "lewdness" which present the same problems for the State's case in this chapter as in § 99.1.

Therefore the trial court also erred in ordering the injunction on this ground.

III. *The ground under Des Moines ordinance 8865.* On June 17, 1975, the City of Des Moines enacted an ordinance regulating massage technicians and establishments, a copy of which was received in evidence. Defendants held a permit under this ordinance for their Des Moines massage parlor.

The ordinance establishes permit requirements for massage establishments and technicians. Insofar as relevant here, § 17–69 of the ordinance contains the following proscriptions:

(a) No massage patron receiving a massage shall caress or fondle the massage technician administering the massage.

(b) No massage technician shall masturbate or fondle the genital area of a massage patron.

(c) No massage technician shall administer a massage to a massage patron unless such technician's sexual and genital body parts are completely covered by opaque clothing.

Under § 17–64 of the ordinance a violation of these provisions constitutes a ground for suspension or revocation of the establishment's permit.[2] Upon a first violation the city council is authorized to suspend the permit for one month. A second violation is a ground for revocation. In that event no massage establishment could operate on

---

2. The record does not show whether a criminal penalty also exists.

the same premises for one year, and the permittee could not conduct such business in the city for that period.

The trial court did not take into account the fact that one of defendants' massage parlors was located outside the Des Moines city limits and hence not subject to the ordinance. The ordinance could not provide a basis for enjoining operation of that establishment.

The other problem with this ground is that the State did not establish that the remedy provided in the ordinance was inadequate. No evidence was adduced to show that a proceeding to suspend or revoke defendants' permit had been or would be unsuccessful. To the contrary, at trial the parties' stipulated that the city council revoked the permit of the Des Moines establishment subsequent to entry of the preliminary injunction.

An injunction is an extraordinary remedy. It must not be granted when an ordinary remedy will do. *Kriener v. Turkey Valley Community School Dist.*, 212 N.W.2d 526, 536 (Iowa 1973). Courts do not usually enter injunctions to prevent acts which are independently subject to penal laws. In the usual case the penalty provided by statute or ordinance is adequate. *Martin v. Beaver*, 238 Iowa 1143, 1149, 29 N.W.2d 555, 558 (1947).

To obtain an injunction it is not enough to show that the law has been persistently violated. The test is whether the facts in the case show a necessity for intervention of equity in order to protect rights cognizable in equity. *State ex rel. Turner v. United Buckingham F.L., Inc.*, 211 N.W.2d 288, 290 (Iowa 1973). To satisfy this test the party seeking the assistance of equity must show the inadequacy of the legal remedy.

We do not think the facts pass this test here. The ordinance contains a speedy remedy at law which was not shown to be inadequate. In fact, no reason has been suggested to show why the ordinance does not reflect the kind of legislation which is appropriate when a legislative body desires to regulate massage establishments. See *Corey v. City of Dallas*, 352 F.Supp. 977 (N.D.Tex.1972), rev'd on other grounds, 492 F.2d 496 (5 Cir. 1974); *Colorado Springs Amusements, Ltd. v. Rizzo*, 387 F.Supp. 690 (E.D.Pa.1974), rev'd on other grounds, 524 F.2d 571 (3 Cir. 1975); *Wes Wards Enterprises, Ltd. v. Andrews*, 42 Ill.App.3d 458, 355 N.E.2d 131 (1976). It provides regular procedures and a remedy which would appear to be effective.

This ground does not support the injunction.

IV. *The public nuisance ground.* Two statutory provisions were relied on by the trial court in finding defendants' massage parlors were enjoinable as a public nuisance, Code §§ 657.1 and 657.2(6). The first defines public nuisance generally and the second defines a specific nuisance:

§ 657.1. Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

§ 657.2(6). Houses of ill fame, kept for the purpose of prostitution and lewdness * * *.

The general nuisance definition alternatively reaches conduct which is injurious to health, indecent, offensive to the senses or which constitutes an obstruction to the free use of property "so as essentially to interfere with the comfortable enjoyment of life and property."

The trial court held defendants' conduct was injurious to the health, indecent and offensive to the senses of the public within the meaning of § 657.1. The court recognized the conduct could not be a nuisance to

the individuals who voluntarily engaged in it.

We do not think the conduct could be either injurious to the health, indecent or offensive to the senses so as essentially to interfere with the life and property of the general public within the meaning of the statute. Any such interference must be substantial. *Higgins v. Decorah Produce Co.*, 214 Iowa 276, 242 N.W. 109 (1932).

When statutory illegality is not the basis of the nuisance, the conduct alleged to be a nuisance under § 657.1 must cause tangible injury, in this case to the health or senses of the public. Mere annoyance or aesthetic objections are not enough. Offense to community tastes does not prove a nuisance. Nor does community disapproval of the activity involved. See *Bader v. Iowa Metropolitan Sewer Co.*, 178 N.W.2d 305 (Iowa 1970) (aesthetic considerations); *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1108, 109 N.W.2d 695, 698 (1961) ("to justify the abatement of a claimed nuisance the annoyance must be such as would cause physical discomfort or injury to a person of ordinary sensibilities"); *Livingston v. Davis*, 243 Iowa 21, 30, 50 N.W.2d 592, 598 (1951); *Amdor v. Cooney*, 241 Iowa 777, 783, 43 N.W.2d 136, 141 (1950); *Casteel v. Town of Afton*, 227 Iowa 61, 287 N.W. 245 (1939); *Kirk v. Mabis*, 215 Iowa 769, 246 N.W. 759 (1933); *Williams v. Wolfgang*, 151 Iowa 548, 132 N.W. 30 (1911); *McGill v. Pintsch Co.*, 140 Iowa 429, 432, 118 N.W. 786, 788 (1908) ("The injury must be tangible. Mere annoyance is not enough.").

The conduct involved here occurred in private. Considered by itself and without regard to the damage the participants might voluntarily inflict upon themselves, it did not substantially interfere with the enjoyment of life and property of the public at large within the meaning of § 657.1.

The general public was not exposed to the allegedly offensive conduct. The public

nuisance doctrine is not intended as a remedy in such circumstances. As the Vermont Supreme Court has said:

> [T]he concept of public nuisance is intended only to govern conduct thrust upon those who find it repugnant. * * * [T]he central basis of the public nuisance concept is interference, and the fact that even some significant portion of the public disapproves of purportedly indecent behavior cannot raise that private conduct to a level sufficient to constitute the requisite interference. *Napro Development Corp. v. Town of Berlin*, 376 A.2d 342, 347 (Vt.1977).

The trial court believed the fact the businesses advertised their services somehow made the conduct public. However offensive the public might find the advertising, the advertising was at most an aesthetic annoyance and could not convert conduct into a nuisance which did not otherwise qualify. The advertising was public, but the conduct and its effects were not. Moreover, serious first amendment problems would be introduced if the advertising itself were alleged to be a nuisance. See *Virginia Board of Pharmacy v. Virginia Cit. Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). We do not confront these problems because that allegation has not been made here.

We also find merit in defendant's contention that the undefined term "indecent" used in § 657.1 is vague in violation of the due process clause of the fourteenth amendment of the U.S. Constitution. The same word was used analogously in § 725.1, The Code, 1971, and we held in *State v. Kueny*, 215 N.W.2d 215 (Iowa 1974), that it was unconstitutionally vague in that context. Actions for prohibitory injunction, although premised in equity, are criminal in nature. *State v. Wedelstedt*, 250 N.W.2d 64, 65 (Iowa 1977).

This reasoning is also applicable to the trial court's reliance on § 657.2(6). This provision depends on the terms "prostitu-

tion" and "lewdness" as did § 99.1, The Code, 1975, and chapter 724, The Code, 1975. Because prostitution was not shown and lewdness suffers from the vagueness infirmity, the injunction cannot be sustained on this ground.

The trial court erred in ordering the injunction on the statutory nuisance grounds.

V. *The inherent equitable power ground.* The trial court held that, apart from any other legal basis, it had inherent equitable power to enjoin conduct which the court found to be damaging or offensive to the public interest. We do not understand this ground to be based on a theory of common-law nuisance but instead on a theory of inherent authority invoked by the State's plea for "such other relief as the court deems just and equitable."

In ordering the injunction on this ground the court performed a legislative function. The regulation of massage parlors, apart from the law of nuisance, is a legislative and not a judicial responsibility. The only authority cited by the court in support of its theory, *Ex Parte Maki,* 56 Cal.App.2d 635, 642, 133 P.2d 64, 68 (1943), overruled on other grounds, *Lancaster v. Municipal Ct. of Bev. Hills Jud. Dist.,* 6 Cal.3d 805, 100 Cal.Rptr. 609, 494 P.2d 681 (1972), stands for this very principle. ("Municipal authorities and not the courts are to determine whether local conditions demand such legislation * * *.").

The City of Des Moines has demonstrated it knows how to control massage parlor operations by ordinance. If it chooses to do so, the legislature has an example it may follow. The Des Moines ordinance is a legislative response to conduct which as the trial court recognized is repugnant and offensive to many members of the public, including judges. However, courts do not exist to be keepers of the public conscience. Instead they exist to uphold the rule of law. They do not uphold the rule of law when they choose to decide cases based either on personal preference or their notions of what legislation the public requires. It is for legislative bodies and not courts to decide what laws are in the public interest or for the good of the people of Iowa. A court of equity does not have a roving commission to punish all conduct which in the opinion of the court corrupts public morals or offends community tastes. See *People v. Vandewater,* 250 N.Y. 83, 91, 164 N.E. 864, 867 (1928).

The trial court erred in asserting an inherent power to enjoin conduct it found "damaging or offensive to the public interest."

Because we find no merit in any of the grounds for injunction relied on by the trial court, we reverse.

REVERSED.