STATE of Iowa, Appellee,

v.

David Dean WHETSTINE, Appellant.

No. 65822.

Supreme Court of Iowa.

Feb. 17, 1982.

Mary K. Hoefer, Iowa City, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Ralph R. Potter, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

Defendant David Dean Whetstine appeals from his conviction of third degree sexual abuse in violation of section 709.4(1), The Code 1979. He raises four issues on appeal: 1) whether third degree sexual abuse can be committed by digital penetration of the female genitalia; 2) whether the definition of "sex act" in section 702.17, The Code, is vague and therefore violative of fourteenth amendment due process; 3) whether there was improper admission of testimony concerning three out-of-court identifications of defendant; and 4) whether there was evidence sufficient to support the jury's determination of guilt. We affirm.

The following chain of events appears from the record. In the early morning hours of April 7, 1980, Karen, the victim of the sexual abuse at issue in this appeal, finished work at midnight at her place of employment in Iowa City. She went to the Burlington Street Laundromat, also in Iowa City, to do her laundry. At approximately 2:00 a. m. she noticed a man walking around inside the laundromat reading the bulletin boards. He approached her and asked the time. She told him it was approximately 2:00 a. m.

Karen had insufficient change to operate the dryers in the laundromat. She was going to obtain change at a nearby convenience store but first began to load clothes that had already been dried into the back of her automobile parked in front of the laundromat. As she was placing a load of clothes into the automobile, someone grabbed her from behind. She was forced, face down, into the back of the car.

After a brief struggle, she turned around to face her attacker. It was the man who inquired as to the time in the laundromat. Despite her resistance he continued the attack, threatening to kill her if she screamed. He unfastened her blouse, pants and undergarments. The assailant touched her breasts and inserted his fingers into her vagina. The entire assault occurred within two to four minutes.

After partially composing herself, Karen reported the assault to the police within five minutes, at approximately 2:25 a. m. She gave the police a detailed description of the assailant. Within twenty minutes, a man matching the description was ap-

prehended and brought to the laundromat. Karen identified the man as her assailant. He was the defendant, David Dean Whetstine. Defendant was subsequently identified as the assailant by Karen on two additional occasions.

Defendant was charged by trial information with sexual abuse in the third degree in violation of sections 709.1 and .4, The Code.[1] After defendant was found guilty by a jury after trial, judgment was entered and sentence pronounced. Defendant appeals.

I. *Definition of "sex act" in section 702.17.* Defendant contends that trial court erred in its refusal to grant his motions to dismiss and for judgment of acquittal. His contention is premised upon the argument that penetration of the female genitalia with a human finger is not a "sex act" as defined in section 702.17, The Code, and therefore he cannot be guilty of third degree sexual abuse under section 709.4(1) which requires a sex act as an element of the offense. We disagree.

The question defendant raises is one of statutory construction. The polestar of statutory construction is legislative intent. *Eggman v. Scurr*, 311 N.W.2d 77, 78 (Iowa 1981); *State v. Conner*, 292 N.W.2d 682, 684 (Iowa 1980). We are, then, essentially asked to interpret section 702.17, The Code, which provides:

> The term "sex act" or "sexual activity" means any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by contact between the mouth and genitalia or by contact between the genitalia of one person

and the genitalia or anus of another person or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

A. *Obscenity analogy.* When we engage in statutory construction of a particular code section, we must construe the statute in its entirety. *City of Des Moines v. Elliott*, 267 N.W.2d 44, 45 (Iowa 1978). Defendant uses this well-known rule of statutory construction to argue that there can be no sex act via digital penetration of genitalia under section 702.17 because such behavior is expressly included within the definition of sex act in our obscenity statute, section 728.1(7). Section 728.1(7) provides:

> "Sex act" means any sexual contact, actual or simulated, either natural or deviate, between two or more persons, or between a person and an animal, by penetration of the penis into the vagina or anus, or by contact between the mouth or tongue and genitalia or anus, or by contact between a *finger of one person and the genitalia of another person* or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

(Emphasis added). Defendant argues that the inclusion of "finger" in section 728.1(7) shows the legislature did not intend to include "finger" in the sex act definition of section 702.17.[2] We cannot agree.

The definition of "sex act" in section 728.1(7) is very explicit to avoid a due process challenge on vagueness grounds. *See* 4 J. Yeager & R. Carlson, *Iowa Practice, Criminal Law and Procedure* § 44 at 16 (1979).[3] It is also broader than the defini-

---

**1.** Section 709.1 provides in part: "Any sex act between persons is sexual abuse by either of the participants when the act is performed with the other participant in any of the following circumstances:

1. Such act is done by force or against the will of the other. In any case where the consent or acquiesence of the other is procured by threats of violence toward any person, the act is done against the will of the other."

Section 709.4 provides in part: "Any sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in

third degree by a person when the act is performed with the other participant in any of the following circumstances:

1. Such act is done by force or against the will of the other participant."

**2.** Note that section 728.1(8)(a) incorporates the section 702.17 definition of sex act to govern the prohibition of sexual exploitation of children under section 728.12, The Code.

**3.** Because the obscenity statute implicates First Amendment rights, it may define and we may interpret sex act more stringently to avoid the

tion of sex act used in section 702.17, although not as broad as that used in section 728.1(8). K. Dunahoo, *The New Iowa Criminal Code: Part II*, 29 Drake L.Rev. 491, 543–48 (1980).[4] We do not find the omission of "finger" in section 702.17 to be controlling on the issue of the legislature's intent.

B. *Prostitution analogy.* Defendant also contends that our holding in *State ex rel. Clemens v. ToNeCa, Inc.*, 265 N.W.2d 909 (Iowa 1978), supports his interpretation of section 702.17. In *ToNeCa*, we found that masturbation by hand was not a sex act under section 99.1, The Code 1975, a civil statute concerning prostitution. *Id.* at 913. We also found that sale of masturbation by hand was insufficient to make the vendor a "prostitute" under section 725.1, The Code 1977 Supp. *Id.* Defendant asserts no legitimate distinction can be drawn between the alleged acts of female prostitution in *ToNeCa* and the assault in the present case. We conclude otherwise.

The facts in *ToNeCa* indicate the hand was to be used as an instrument of massage, not as a substitute for a vagina. The facts here indicate the defendant's finger was used as a substitute for a penis.[5]

C. *Logic.* The final clause of section 702.17, "use of artificial sexual organs or substitutes therefor . . . ." may be inartfully drafted. It is unclear whether "substitutes therefor" applies to artificial sexual organs or natural sexual organs, or both. "Probably what is meant is an artificial sex organ or a substitute for a sex organ.'" 4 *Yeager & Carlson* § 44 at 16. "[I]n a sexual abuse case the finger would probably be

considered a substitute for a sex organ." *Id.* § 629 at 155.

█ We agree that a finger is a substitute for a sexual organ in the present case. It may also be considered as a substitute for an artificial sexual organ. Such an interpretation is just and reasonable. § 4.4(3), The Code. It would not be logical to allow a defendant to be convicted of sexual abuse for using a plastic penis, or a similar inanimate object as a substitute for the plastic penis, but to prohibit his conviction if he used his fingers or hand. The emphasis in the offense of sexual abuse is on the forcible nature of the assault, not on whether defendant used his penis or his finger to carry out the sexual abuse. *See* 4 *Yeager & Carlson* § 201 at 57.

D. *Other Jurisdictions.* The conclusion that digital penetration of genitalia is a sex act that can be the underlying actus reus in sexual abuse, rape, or similar offenses has been reached in other jurisdictions.

In Arizona, sexual assault requires sexual intercourse, which is defined as "penetration into the penis, vulva or anus by any part of the body or by any object . . . ." Ariz.Rev.Stat. §§ 13–1401(3), 13–1406 (1978). In Montana, sexual intercourse is defined in connection with its sexual abuse statute to include penetration by any body member. Mont.Rev. Codes Ann. § 45–2–101(61) (1981). Nebraska's sexual abuse statutes prohibit sexual penetration, defined to include "any intrusion, however slight, of any part of the actor's body or any object manipulated by the actor into the genital or anal openings of the victim's body . . . ." Neb.Rev.Stat. § 28–318(5) (1979).

"key problem of a 'chilling effect' on protected speech." See L. Tribe, *American Constitutional Law*, 660 n. 29 (1978).

4. "The ultimate scope of a term capable of a broad or narrow meaning in the abstract must be determined by its context in a particular instance. The same word may receive a different construction in different statutes." *Wisconsin's Environmental Decade v. D. N. R.*, 85 Wis.2d 518, 528, 271 N.W.2d 69, 73–74 (1978).

5. See generally *Comm. v. Gallant*, 373 Mass. 577, 590 n.17, 369 N.E.2d 707, 715 n.17 (1977): "And while the penis may remain the rapist's

favorite weapon, his prime instrument of vengeance, his triumphant display of power, it is not in fact his only tool. Sticks, bottles and even fingers are often substituted for the 'natural' thing".

Cf. *State v. McKee*, 312 N.W.2d 907, 910, 912–14 (Iowa 1981) (defendant convicted of first-degree sexual abuse after various acts of sexual abuse, including anal intercourse and penetration of the vagina with his fist, the latter act causing the serious injury element of section 709.2).

Several judicial decisions of other jurisdictions have found digital penetration of genitalia to be an element of rape, sexual abuse, or some similar offense. In *Commonwealth v. Gallant*, 373 Mass. 577, 578, 369 N.E.2d 707, 709 (1977), defendant was convicted of unnatural sexual intercourse with a child under the age of sixteen. The court defined unnatural sexual intercourse "to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Id.* at 584, 369 N.E.2d at 712. This definition was relied upon in *Commonwealth v. Mamay*, 5 Mass. App. 708, 369 N.E.2d 1036, 1037 (1977), to reverse the dismissal of an indictment charging defendant with having unnatural sexual intercourse with a child under sixteen. The charge was based upon the allegation that "defendant had forcefully and unlawfully penetrated the sexual organs of the victim, a female child, by means of his hand and/or fingers.'" *Id.*, 369 N.E.2d at 1037. The court found a finger was comprehended within the meaning of the words "a part of a person's body" as used in the definition of unnatural sexual intercourse in *Gallant*. *Id.*, 369 N.E.2d at 1037.

In *State v. Cain*, 28 Wash.App. 462, ——, 624 P.2d 732, 733 (1981), defendant was convicted of rape in the first degree. "The rape was committed by Cain's insertion of his fingers into the victim's vagina." *Id.*, 624 P.2d at 733. The sole issue in *Cain*, which parallels the issue in this division, was whether a finger would be "an object" under the former statutory definition of sexual intercourse. *Id.*, 624 P.2d at 733. That statutory definition of sexual intercourse provided:

    (1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

    (b) Also means any penetration of the vagina or anus however slight, *by an object*, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically

recognized treatment or diagnostic purposes, ...

*Id.*, 624 P.2d at 733 (emphasis in original) (former Wash.Rev.Code § 9.79.140(1)). The court, in reading sections (a) and (b) together said, "[it is] clear that the legislature did not differentiate between animate and inanimate objects. Whenever the requisite penetration occurs, by whatever object, the unlawful invasion of another person's body results. A finger is an object within the meaning and intent of the statute." *Id.*, 624 P.2d at 733–34.

In *People v. Hernandez*, 80 Mich.App. 465, 467, 264 N.W.2d 343, 344 (1978), defendant was convicted of first-degree criminal sexual conduct. Defendant had inserted his finger into the victim's vagina to remove her tampon and then commenced to masturbate himself in her presence. *Id.* at 474, 264 N.W.2d at 347 (Maher, J., concurring). The court upheld trial court's allegedly erroneous instruction on the requisite elements of the offense: "To establish this charge, the People must prove each of the following elements beyond a reasonable doubt: First, the Defendant engaged in a sexual act which involved some actual entry into the genital openings of the complainant's body, the act alleged...." *Id.* at 471–72, 264 N.W.2d at 346.

In *Griffin v. State*, 514 S.W.2d 278, 279–80 (Tex.Cr.App.1974), defendant was convicted of assault with intent to rape for his digital penetration of the anus and vagina of an eight year old female. The court rejected defendant's argument that his behavior comprised no more than the offense of handling or fondling a child's sexual parts. *Id.* at 281–82.

We find that *Gallant, Mamay, Cain, Hernandez*, and to a lesser extent *Griffin*, further support our conclusion that digital penetration of genitalia is a sex act under section 702.17, The Code. Two decisions from other jurisdictions lean the other way, but these cases are distinguishable from the present one. In *State v. Doe*, 351 A.2d 84 (Del.Super.1976), the court was faced with the issue of whether penetration of a vagi-

na by a male tongue was second degree rape under the provisions of 11 Del.Code Ann. §§ 763, 773. The court chose to exclude oral penetration from the definition of rape noting: "[I]t is clear that nonconsensual cunnilingus and other forms of abhorrent sexual misconduct are prohibited by other sections and may be severely punished." *Id.* at 85. In rejecting the prosecution's argument for an expanded definition of rape, the court said:

> It must be observed that under the Delaware statute, if rape were to be defined to include penetration by some organ (or object) other than a penis, there would be no logical reason to limit those eligible to be charged with rape to males. Furthermore, the definition advocated by the State would seem to create an untenable distinction where tongue penetration ... would be considered rape whereas penetration by a finger, for example, would not.

*Id. Doe* is distinguishable from the present case because it involved construction of an older, narrower rape statute. Iowa has abandoned its rape statute in favor of a broader prohibition against sexual abuse. 4 *Yeager & Carlson* § 201 at 57. Thus, the interpretation by the court in *Doe* is not persuasive in our interpretation of our modern sexual abuse statute.

In *State v. Hooper*, 57 Ohio St.2d 87, 87, 11 Ohio Op.3d 250, 250, 386 N.E.2d 1348, 1349 (1979), defendant was convicted of felonious sexual penetration for inserting his finger into the vagina of the victim. The "sole issue raised" in *Hooper* was whether, under Ohio's felonious sexual-penetration statute, Ohio Rev.Code Ann. § 2907.12, a finger is an "object." *Id.*, 11 Ohio Op.3d at 250, 386 N.E.2d at 1349. Section 2907.12 provides, in pertinent part: (A) No person without privilege to do so shall insert any instrument, apparatus or other object into the vaginal or anal cavity of another ... ." Because the two specific nouns in section 2907.12 were restricted to inanimate objects, the court interpreted the third general noun, "other object," to be similarly limited to inanimate objects. *Id.* at 89–90, 11 Ohio Op.3d at 251–52, 386 N.E.2d at 1350.

It found that since a finger was not inanimate, it could not be an "object" under section 2907.12(A), and defendant could not have violated Ohio's sexual-penetration statute with his fingers. *Id.* at 90, 11 Ohio Op.3d at 252, 386 N.E.2d at 1350–51.

*Hooper*, however, is distinguishable from the present case because section 702.17, The Code, unlike Ohio Rev. Code Ann. § 2907.-12, does not draw the same distinction between inanimate and animate objects. By its terms, section 702.17 includes both animate objects, such as the penis and mouth, and inanimate objects, such as "artificial sexual organs."

■ In summary, we hold that digital penetration of genitalia is a "sex act" within the purview of section 702.17, The Code. Therefore, sexual abuse in the third degree in violation of section 709.4(1) can be committed by insertion of a finger into a vagina.

II. *Vagueness.* Defendant contends that section 702.17 is unconstitutionally vague under U.S.Const. amend. 14, because it fails to give a person of ordinary intelligence fair warning of what conduct is prohibited. We do not agree.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972). *See also Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972).

Defendant's constitutional argument is similar to one we recently resolved in *State v. Sullivan*, 298 N.W.2d 267 (Iowa 1980), where a portion of section 709.4(2) was found to be unconstitutionally vague. In *Sullivan* we said:

> The principles we apply in this type of case are well established.... The person mounting the constitutional challenge on a legislative enactment carries the heavy burden to rebut a strong presumption of constitutionality. If a statute can be made constitutionally definite by a reasonable construction, this court is under a duty to give the statute that construction.

> The specificity due process requires of a penal statute need not be apparent from the face of the statute but may be ascertained by reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage.

*Id.* at 270–71 (citations omitted).

Upon application of the principles discussed in *Sullivan*, it is clear defendant's constitutional challenge must fail because he has not carried the heavy burden to rebut the presumed constitutionality of section 702.17. We find that the reasonable construction of section 702.17 in division I and the authorities discussed therein has rendered the section constitutionally definite. We also conclude that section 702.17 satisfies the two requirements of giving a person of ordinary intelligence fair notice of what is prohibited, and providing an explicit standard for those who apply it. *State v. Pierce*, 287 N.W.2d 570, 573 (Iowa 1980); *Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979). *See also Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298–99, 33 L.Ed.2d at 227.

■ First, a person of ordinary intelligence is notified by section 702.17 that insertion of fingers or a hand into a vagina is a sex act. Second, insofar as relevant here,

section 702.17, in conjunction with section 709.4(1), provides law enforcement officials with a standard that is explicit enough to avoid the problem of arbitrary and discriminatory enforcement. Section 702.17 is not violative of defendant's due process rights on vagueness grounds.

III. *Admissibility of evidence concerning out-of-court identifications.* Defendant argues that trial court's admission of evidence concerning three out-of-court identifications of defendant by the victim failed to meet due process standards of fairness under U.S.Const. amends. 5 and 14. We disagree and find that trial court's admission was proper.

The victim first identified defendant at a showup outside the Burlington Street Laundromat approximately thirty minutes after the sexual assault. About one half hour later, at approximately 3:15 a. m., the second identification occurred at the Iowa City police station. Finally, Karen identified defendant from a photographic lineup on August 21, 1980.

■ We employ a two-prong analysis to weigh the merits of defendant's challenge to the identification procedure used for the three out-of-court identifications. First, we determine if the procedure used was impermissibly suggestive and second, if it was, we determine whether under the totality of circumstances the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *State v. Mark*, 286 N.W.2d 396, 403–04 (Iowa 1979). We will assume, without deciding, that the procedures used here were impermissibly suggestive. However, we find that there was not a "very substantial likelihood of irreparable misidentification" and that the identifications were reliable under the totality of the circumstances.

We analyze five factors in our determination of reliability:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation.

*Id.* at 405.

Discussion of the first out-of-court identification will provide a nearly complete analysis of defendant's claims. However, factors that distinguish the second and third identifications will be discussed where relevant.

A. *Identification at the scene of the crime.* The first out-of-court identification occurred when Iowa City police officer Thomas Immermann drove up in front of the Burlington Street Laundromat with defendant in the passenger seat of a police car. Defendant got out of the car and stood beside it. The victim was twenty feet from defendant and, when asked if defendant was her assailant, she replied yes.

1. *Opportunity to view.* Karen had an extensive opportunity to view defendant. He had spent ten minutes inside the well-lit laundromat in her presence. She noticed him as he read the bulletin boards. When defendant approached her and asked for the time, she viewed the details of his face at close range.

During the sexual assault, the victim again viewed defendant's face for a portion of the attack. The back of her automobile, which was parked with its rear end facing the laundromat, was lit by an interior light, the light from the laundromat, and overhead street lighting. The total observation period of defendant's face was at least several minutes.

2. *The degree of attention.* The victim paid a high degree of attention to the defendant. She testified about his activities in the laundromat, in particular, his reading the bulletin boards and their conversation concerning the time of day. During the attack she confronted defendant and observed his face. He spoke to her several times during the attack. The victim recalled the words of one threat: "I'll kill you. Shut up, or I'll kill you." Defendant told Karen not to go to the police because he knew who she was and where to find her. We find that the victim paid an extremely high degree of attention to defendant and his physical characteristics.

3. *Accuracy of the description.* Karen gave Iowa City police officer Ralph Cox a detailed description of defendant. The description given fit defendant and the clothing he wore in every detail.[6] She correctly described his height, weight and build. The description of defendant's clothing, blue pants, red plaid shirt, and a blue ski jacket, was also accurate. Defendant contends that the victim said she had scratched his face during the assault and since he had no marks on his face when apprehended, he could not have been the assailant. However, the record indicates only that she attempted to scratch defendant with her automobile keys. She was not certain if she succeeded.

4. *Level of certainty demonstrated at the confrontation.* Officer Cox testified that Karen did not indicate any hesitancy at the identification: "It wasn't an immediate response. It was a studied response. She was observing the subject, and then gave a positive answer." Officer Immermann testified that she identified defendant as her assailant, and made a second positive response when he asked her if she was sure.

5. *Time span.* Karen identified defendant within thirty minutes of the incident of sexual abuse. This is only a short lapse of time.

B. *Identification at the Iowa City police station.* After being arrested, defendant was taken to the Iowa City police station at approximately 2:45 a. m. At approximately 3:15 a. m., Karen made a second identification of defendant from ten to fifteen feet away.

---

6. The victim identified defendant's hair color as medium to light brown. His hair was actually medium red. The apparent discrepancy may have been due to the mercury vapor lights on Burlington Street. Iowa City police officer

Ronald Fort testified that defendant's hair appeared to be medium to light brown immediately after his arrest in the light of the mercury vapor lamps on Burlington Street.

The factors discussed in connection with the first out-of-court identification apply to this identification as well. It should be noted, however, that the lighting was better at the police station than outside the Burlington Street Laundromat and, that the victim was in closer proximity to the defendant at the second identification. Karen had a high level of certainty at the second identification.

 C. *Photographic lineup.* Defendant was again identified by the victim in a photographic lineup on August 21, 1980. She viewed the array of six persons for approximately thirty seconds and identified defendant as her assailant. The factors from the analysis of the first identification apply here with the exception that a greater period of time had elapsed between the initial encounter between the victim and defendant and the third identification. This four month lapse does not defeat the reliability of the identification in light of *Neil v. Biggers,* 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401, 412 (1972) (lapse of seven months between rape and identification did not defeat reliability of identification by victim).

In summary, we cannot say that under the totality of circumstances in this case there was a very substantial likelihood of irreparable misidentification of defendant. He has suffered no deprivation of due process under U.S.Const. amends. 5 or 14. We find no error in trial court's admission of evidence concerning the three out-of-court identifications.

VI. *Sufficiency of the evidence.* Defendant's final contention is that there was insufficient evidence to support a guilty verdict. We disagree.

We view all the evidence in the light most favorable to the prosecution when determining an issue of sufficiency of evidence to support a guilty verdict. Under the standard stated in *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980), we find the evidence sufficient to support the verdict of defendant's guilt.

We find no merit in any of the contentions raised by defendant. Therefore, we affirm his conviction.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs in all of the opinion and the result, except for division I(d).