# IN THE COURT OF APPEALS OF IOWA

No. 15-0751
Filed October 12, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT JOHN THEDE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Tama County, Patrick R. Grady, Judge.

        A defendant challenges his convictions for sexual abuse, incest, and indecent exposure.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Richard J. Bennett Sr., until withdrawal, Assistant Attorneys General, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Robert Thede appeals his convictions for sexual abuse in the third degree and incest, claiming the State presented insufficient evidence at his bench trial to prove he committed a sex act with his fifteen-year-old granddaughter. He also challenges his indecent-exposure conviction, contending the State failed to show his intent "to arouse or satisfy the sexual desires of either party." Because the district court properly found proof beyond a reasonable doubt to support the elements of all three sexual offenses, we affirm.

## I.     Facts and Prior Proceedings

Sixty-year-old Thede started to spend more time with his teenaged granddaughter in the summer of 2013. She sometimes stayed overnight at his house, and he provided her gifts, including a laptop, clothes, and a dog. He also bought her lingerie, a vibrator, and "orgasmic gel" from Spencer's Gifts. Thede freely discussed sexual matters with his granddaughter, suggesting she should be "having more of a fun sex life." He encouraged her to have sex with a certain seventeen-year-old boy he chose for her and "tried talking to [her] about having sex with adults."

In early August 2013, during one of his granddaughter's visits to his house, Thede told her he needed a haircut. On his concrete patio outside a sliding glass door, the granddaughter shaved Thede's head with an electric razor. He then told her "it would be fun if [she] were to shave his genitals." Although she "felt very creeped out" and uncomfortable, she acceded to her grandfather's wishes and shaved the hair around his anus, penis, and scrotum. She testified: "I did not touch him at all when this had happened. . . . [H]e had

spread his butt cheeks for me to shave his anus." She further testified her grandfather moved his penis while she was shaving his pubes. Her cousin and another teenaged boy witnessed the shaving incident from inside the house; the cousin heard his grandfather saying "oh honey, right there" and recalled that Thede "seemed like he was enjoying" the experience.

Later the same night, those three teenagers and three of their friends returned to Thede's home after attending a community event. The teenagers recalled Thede provided "a bunch of booze" and urged them to have a "whipped cream naked party." The granddaughter testified she and her friend undressed, covered their bodies with whipped cream supplied by Thede, laid down on Thede's kitchen floor, and allowed the boys to lick it off. The granddaughter said Thede told her that night "he wanted to perform oral sex" on her.

On November 1, 2013, the State charged Thede with sexual abuse in the third degree, in violation of Iowa Code section 709.4(2)(c)(3) (2013), and indecent exposure, in violation of section 709.9, in connection with the August shaving incident. In February 2014, the State added a charge of incest, in violation of section 726.2. On November 17, Thede waived his right to a jury and appeared for a bench trial. On January 9, 2015, the district court issued an order finding the State had proved the elements of all three offenses beyond a reasonable doubt. The district court imposed indeterminate sentences of ten years, five years, and one year to run concurrently with each other but consecutively to the thirty-year term Thede faced on other matters. Thede now appeals his convictions of third-degree sexual abuse, incest, and indecent exposure.

## II.     Standard of Review

We review Thede's challenge to the sufficiency of the evidence for correction of legal error.  *See* Iowa R. App. P. 6.907; *see also State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).  We view the record in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.  *Howse*, 875 N.W.2d at 688.  We will uphold the district court's verdict if substantial evidence supports it.  *Id.*  Evidence is substantial when "a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt."  *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997).

## III.     Substantial-Evidence Analysis

### A.  Sexual Abuse and Incest

The district court found the State proved the following elements of sexual abuse in the third degree: (1) Thede committed a sex act with his granddaughter, (2) they were not living together as husband and wife, (3) the granddaughter was fourteen or fifteen years old, and (4) Thede was in a position of authority over the granddaughter and used that authority to coerce her to submit.  *See* Iowa Code § 709.4(2)(c)(3).  The court further found the State proved the following elements of incest: (1) Thede performed a sex act with his granddaughter (2) knowing she was related to him as a "descendent."  *See id.* § 726.2.

On appeal, Thede challenges the State's proof he committed the requisite "sex act" for each offense.  The other elements are uncontested.

The term "sex act" was defined in the 2013 Iowa Code as:

> any sexual contact between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person . . . ; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

*Id.* § 702.17. In this case, the State relied on the final alternative definition of sexual contact, that is, "by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus." *See id.*

Thede raises two issues concerning the State's proof of a sex act. First, he argues the electric razor used by his granddaughter did not qualify as an artificial sexual organ or a substitute therefor. Second, he contends the shaving encounter was not sexual in nature. We will address each issue in turn.

**1. Electric Razor as Artificial Sex Organ or Substitute Therefor**

Thede contends the electric razor was not an artificial sex organ because it was "not itself a sex toy" or an object with the purpose of replacing a sexual organ. He further argues the razor was not a "substitute" for a sex organ because it was not used in the place of a penis or vagina. Thede asserts the razor was not used as a substitute sexual organ because it was "not used to achieve or attempt penetration. Nor was it used for masturbation." Thede urges the word "substitute" means a substitute for a sexual organ and not a substitute for a hand. *See State v. Williams*, No. 03-1343, 2004 WL 1898551, at *2 (Iowa Ct. App. Aug. 26, 2004) (explaining "[t]he provision concerning artificial sexual organs or substitutes is a separate category [in section 702.17 (2001)], separated by a semicolon, from the provision concerning hand to genital contact").

Our supreme court considered the final clause of section 702.17 concerning artificial and substitute sex organs in *State v. Whetstine*, 315 N.W.2d 758, 760–61 (Iowa 1982). In that case, the applicable version of the Iowa Code did not include "contact between the finger or hand of one person and the genitalia or anus of another person" in the definition of "sex act." *See* Iowa Code § 702.17 (1979). The questions before the supreme court were whether digital penetration constituted a sex act and, by implication, whether a finger fit the definition of an "artificial sexual organ[] or substitute[] therefor."[1] *Whetstine*, 315 N.W.2d at 760 (quoting Iowa Code § 702.17). The *Whetstine* court held "a finger is a substitute for a sexual organ in the present case. It may also be considered as a substitute for an artificial sexual organ." *Id.* at 761. The court reasoned: "It would not be logical to allow a defendant to be convicted of sexual abuse for using a plastic penis, or a similar inanimate object as a substitute for the plastic penis, but to prohibit his conviction if he used his fingers or hand." *Id.*; *see State v. Mueller*, 344 N.W.2d 262, 267 (Iowa Ct. App. 1983) (finding, under logic of *Whetstine*, when defendant "rubbed and yanked" victim's testicles, he was using his hand as a substitute for a vagina); *see also State v. Anderson*, No. 04-1086, 2005 WL 3115469, at *3–4 (Iowa Ct. App. Nov. 23, 2005) (concluding language of section 709.12 did not restrict use of artificial or substitute sexual organs to the perpetrator and finding defendant used victims' buttocks as substitute for vaginas).

---

[1] Thede points to *Whetstine*'s discussion of "inartful drafting" and the debate whether "substitute therefor" applies to artificial sexual organs, natural sexual organs, or both. *See Whetstine*, 351 N.W.2d at 761. *Whetstine* suggested: "Probably what is meant is an artificial sex organ or a substitute for a sex organ." *Id.* (quoting 4 Yeager & Carlson, *Iowa Practice: Criminal Law and Procedure* § 44, at 16 (1979)).

The State argues the electric razor was a substitute for an artificial sexual organ in this case because it operated much like the penis-shaped vibrator that Thede purchased for his granddaughter at Spencer's Gifts. The granddaughter testified, when the electric razor was switched on, it caused a vibration and "was similar to a vibrator." The State also argues the razor "was a substitute for an actual sex organ—a penis." The State emphasizes that under our case law, the pubic hair and pubic area are considered part of the human genitalia. *See State v. Martens*, 569 N.W.2d 482, 486 (Iowa 1997) (explaining "the term 'genitalia' broadly describes and includes many organs associated with the reproduction apparatus").

After reviewing *Whetstine* and its progeny, along with *Martens*, we are convinced the district court correctly decided the granddaughter's use of an electric razor to shave Thede's pubic hair and anus constituted a sex act. The factfinder may reasonably view the razor as an artificial sexual organ akin to a vibrator *or, alternatively,* as a substitute for an actual sexual organ, like a penis or female genitalia. The razor's contact with Thede's genitalia and anus satisfied the final definition listed in the statute—the language does not require proof of penetration or masturbation as suggested by Thede on appeal. *See* Iowa Code § 702.17 (defining "sex act" as sexual contact between individuals "by use of artificial sexual organs or substitutes therefor *in contact with* the genitalia or anus" (emphasis added)); *see also State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994) (stating "prohibited contact occurs when . . . the specified parts or substitutes touch").

### 2. Shaving Episode as Sexual in Nature

Thede next argues the State presented "insufficient evidence to establish the shaving incident was sexual in nature." He submits a nonsexual purpose existed for shaving, namely, removing body hair for hygienic reasons.

A factfinder may determine the sexual nature of contact "from the type of contact and the circumstances surrounding it." *Pearson*, 514 N.W.2d at 455. The circumstances considered would plainly include contact "made to arouse or satisfy the sexual desires of the defendant or the victim." *Id.* But the lack of an obvious sexual motivation does not preclude a finding of sexual abuse if the overall context reveals a lascivious nature underlying the contact. *See State v. Howard*, 825 N.W.2d 32, 44 (Iowa 2012).

> Other relevant circumstances include but are not limited to the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.

*Id.* (quoting *Pearson*, 514 N.W.2d at 455).

We find ample evidence in this record pointing to the sexual nature of the shaving episode. Thede pursued an inappropriate, sexually charged relationship with his teenaged granddaughter. He talked to her about her sex life and exhorted her to be more adventuresome. He purchased erotic lingerie and "sex toys" for her. The shaving incident itself was more than momentary, and the granddaughter initiated contact with Thede's intimate body parts at his direction. During the shaving, a teenaged onlooker perceived Thede was enjoying the experience, and at one point Thede made a lustful comment.

Thede insists because he was laughing and joking around while his granddaughter shaved him, the State did not establish the sexual nature of the contact. But Thede's levity during the incident is not mutually exclusive of engaging in sexual contact. In addition, the exhibitionist nature of the shaving undermines Thede's assertion on appeal that the purpose was personal hygiene.

The shaving episode also differed from *State v. Monk*, 514 N.W.2d 448, 451 (Iowa 1994), where the court found that inserting a broom handle into the victim's rectum was not necessarily sexual in nature because the male occupants of the apartment often engaged in similar "horseplay" and "there was nothing sexual going on the evening of the incident." By contrast, the same night as the shaving episode, Thede arranged for his granddaughter and her teenaged friends to drink alcohol and then take part in a lewd display in his kitchen involving nudity and whipped cream. He later told his granddaughter he wanted to have oral sex with her. Thede's subsequent actions support the district court's determination the shaving episode was sexual in nature.

The State offered substantial evidence supporting the district court's conclusion that Thede was guilty beyond a reasonable doubt of sexual abuse and incest.

### B. Indecent Exposure

Thede also challenges his indecent exposure conviction. The crime of indecent exposure has four elements:

> 1. The exposure of genitals or pubes to someone other than a spouse . . . ;
> 2. That the act is done to arouse the sexual desires of either party;
> 3. The viewer was offended by the conduct; and

4. The actor knew, or under the circumstances should have known, the victim would be offended.

*State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008) (citation omitted). On appeal, Thede challenges only the second element—that he acted with the intent to arouse the sexual desires of either himself or his granddaughter.

Thede argues the State's proof of a sexual intent was inadequate because "there is no indication that [he] masturbated or was sexually aroused at the time of the exposure." For the reasons discussed above in our analysis of Thede's challenge to the sex-act elements of sexual abuse and incest, we find substantial evidence Thede's exposure of his genitalia to his granddaughter was sexually motivated. *See State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008) ("The requisite intent to arouse or gratify the sexual desire of any person can be inferred from an accused's conduct, remarks, and all surrounding circumstances."). Contrary to Thede's argument, neither an erection nor masturbation is a prerequisite for an indecent exposure conviction. *See State v. Smith*, No. 01-2654-CR, 2002 WL 453401, at *2 (Wis. Ct. App. Mar. 26, 2002) (holding "the lack of a visible erection does not negate the existence" of an intent to sexually arouse). Viewing the evidence in the light most favorable to the State, we decline to disturb the district court's finding of guilt on the indecent exposure count.

**AFFIRMED.**