**STATE of Iowa, Appellee,**

v.

**Kris Kanon PEARSON, Appellant.**

No. 92–1799.

Supreme Court of Iowa.

March 23, 1994.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and James J. Katcher, Asst. County Atty., for appellee.

TERNUS, Justice.

The defendant, Kris Kanon Pearson (Pearson), was convicted in a bench trial of four counts of second-degree sexual abuse in violation of Iowa Code section 709.3(2) (1991). He appeals his conviction of count four only.

Pearson argues on appeal that sexual abuse requires the occurrence of a "sex act" which is defined in part as "sexual contact." Because both Pearson and his victim remained clothed throughout the incident that gave rise to count four, Pearson contends there was no sexual *contact*. He asserts, therefore, that there was insufficient evidence to convict him of count four. We affirm.

### I. *Underlying Facts.*

The victim and his brother recounted the events giving rise to count four at trial. At the time of the trial in 1992, the victim, B.S., was eight years old and his brother, J.S., was ten. They testified that in August of 1990 they were with Pearson in Pearson's parked truck. J.S. was seated in the front passenger seat and B.S. was sitting on Pearson's lap in the driver's seat. Pearson had reclined the driver's seat and was laying back. B.S. was pretending to drive the truck.

At one point Pearson unzipped his pants and his penis was out. Pearson told B.S. he was "going to get come all over [B.S.]."

Eventually, Pearson covered his penis and had B.S. sit on top of him. B.S. continued to face forward. Pearson pressed B.S.'s body close to his with B.S.'s anus over Pearson's penis. B.S. could feel Pearson's penis beneath him. Pearson masturbated by moving his covered penis against B.S.'s clothed buttocks.

### II. *Applicable Law.*

Section 709.3 provides that a person is guilty of sexual abuse in the second degree when a person commits sexual abuse and the other participant is under the age of twelve. Section 709.1 defines sexual abuse as any "sex act" between persons when one of the participants is a child. The definition of "sex act" is found in section 702.17:

> The term "sex act" or "sexual activity" means any *sexual contact* between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by *contact between the genitalia of one person and the genitalia or anus of another person;* contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 150, 150A, 151, or 152; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

(Emphasis added.) We must decide whether the incident in the truck was "sexual contact" between the genitalia of Pearson and the anus of B.S. Pearson argues there was no contact because his penis and B.S.'s anus were covered by clothing.

### III. *Sexual Contact.*

In *State v. Phipps,* 442 N.W.2d 611, 613 (Iowa App.1989), our court of appeals held that a "lack of skin-to-skin contact alone does not, as a matter of law, put defendant's conduct outside the definition of 'sex act.'" In *Phipps,* the defendant placed his hand inside a fourteen-year-old boy's jeans but over the boy's underwear. While defendant was touching the boy, he placed the boy's hand on the outside of defendant's underwear and on defendant's genitalia.

The State argued that to require skin-to-skin contact would prevent a finding of sexual abuse whenever a defendant had used a condom, glove, or underwear while performing the "sex act." *State v. Phipps*, 442 N.W.2d 611, 612 (Iowa App.1989). The court decided the legislature did not intend "that a piece of clothing as flimsy as a pair of shorts or even a girl's panties" would insulate a defendant from punishment for performing a "sex act" with a child. *Id.* at 613. Recognizing that certain types of sexual contact may not be possible with intervening clothing present, the court concluded that the State would have to prove on a case-by-case basis whether the defendant's conduct fell within the definition of contact described in section 702.17. *Id.*

Pearson does not argue on appeal that the lack of skin-to-skin contact automatically puts his conduct outside the scope of section 702.17. However, he does contend that his conviction "represents an illustration of *Phipps* carried to its absurd extreme." He urges that the holding of *Phipps* should be limited to those situations where a defendant has used a condom, glove or underwear while performing the "sex act." Pearson contends that an expansion of *Phipps* beyond these parameters would encompass conduct never intended to be labeled sexual abuse. For example, he claims that because intent to arouse or satisfy one's sexual desires is not necessary for a finding of second-degree sexual abuse, an adult who bounces a child on his or her lap could be found guilty of sexual abuse.

■ We reject Pearson's argument. First we hold that skin-to-skin contact is not required in order to establish a "sex act" under section 702.17. There is no language in the statute which would limit its scope in this way. Consequently, prohibited contact may occur even though the specified body parts or substitutes are covered. *See State v. Schnaidt*, 410 N.W.2d 539, 540 (S.D.1987).

■ Nor are we inclined arbitrarily to limit our holding to situations involving the use of a condom or glove. Whether intervening material prevents contact must be determined on a case-by-case basis, considering the nature and amount of the intervening material. If the intervening material would, from an objective viewpoint, prevent a perception by the participants that the body parts (or substitutes) have touched, contact has not occurred. Thus, prohibited contact occurs when (1) the specified body parts or substitutes touch and (2) any intervening material would not prevent the participants, viewed objectively, from perceiving that they have touched.

We do not agree with Pearson that an adult who bounces a child on his or her lap risks a conviction of sexual abuse under our interpretation of "contact." Not all contact is a "sex act." The contact must be between the specified body parts (or substitutes) and must be *sexual* in nature.

■ The sexual nature of the contact can be determined from the type of contact and the circumstances surrounding it. For example, in *Phipps*, the sexual nature of the contact was shown by evidence that the defendant rubbed the victim's genitalia, placed the victim's hand on the defendant's genitalia and ejaculated. *Phipps*, 442 N.W.2d at 612. The fact that no nonsexual purpose for the contact was discernible also demonstrated the sexual nature of the contact.

■ On the other hand, the contact between an adult and a child bouncing on his or her lap would not be sexual in nature unless the circumstances surrounding it suggested it was. Such circumstances certainly include whether the contact was made to arouse or satisfy the sexual desires of the defendant or the victim. However, the lack of such motivation would not preclude a finding of sexual abuse where the context in which the contact occurred showed the sexual nature of the contact. Other relevant circumstances include but are not limited to the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.

We are well aware of the general principles that penal statutes are to be strictly construed and any ambiguity should be resolved in favor of the defendant. *Bown v. State,* 475 N.W.2d 3, 6 (Iowa 1991); *State v. Byers,* 456 N.W.2d 917, 919 (Iowa 1990). However, resort to these rules is not necessary where legislative intent is evident through a reasonable construction of the statute. *Bown,* 475 N.W.2d at 6; *State v. Kirklin,* 357 N.W.2d 310, 313 (Iowa 1984) ("[s]trict construction is not to be used to inject doubt when legislative intent is evident through a reasonable construction of the statute").

We are confident that the legislature did not intend to immunize a defendant from liability for a sex act simply because he wore a condom which prohibited skin-to-skin contact. Therefore, we have rejected a strict interpretation of the statute which would require contact between the skin of the defendant and the skin of the victim. The only task remaining is to give the term "sexual contact" a reasonable construction consistent with the legislature's intent. The standards we have adopted do so.

We believe the factors and circumstances discussed above, when applied to particular conduct, will result in a fair application of Iowa's sexual abuse laws consistent with the intent of the legislature. We do not agree with Pearson that innocent persons will be unjustly convicted of sexual abuse because of our interpretation of the statute. Whether certain conduct constitutes "sexual contact" is a fact question. As in any fact-finding process, judges and juries must exercise common sense in their deliberations and be reasonable in their judgments. Common sense and reasonableness, together with the standards set forth above, will protect the innocent person from an arbitrary perversion of the sexual abuse laws.

### IV. *Sufficiency of the Evidence.*

When a defendant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine if, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt. *State v. Mulder,* 313 N.W.2d 885, 888 (Iowa 1981), *cert. denied,* 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982). We consider all legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence. *State v. Hy,* 458 N.W.2d 609, 612 (Iowa App. 1990).

In this case, although both Pearson and B.S. were clothed when the contact occurred, there was evidence that Pearson's covered penis touched B.S.'s covered anus. Both B.S. and J.S. described the position of Pearson and B.S. such that the court could fairly conclude that B.S.'s anus was positioned directly over Pearson's penis. Although there was no description of the clothing worn by Pearson and B.S. on this August day, B.S. could feel Pearson's penis beneath him. We believe the trial court could reasonably find that contact occurred between Pearson's penis and B.S.'s anus.

There was also abundant evidence of the sexual nature of the contact that took place between Pearson and B.S. Pearson reportedly made the comment to B.S. that he was "going to get come" all over B.S. B.S. and J.S. testified that Pearson purposefully moved his hips up and down while his penis was pressed against B.S.'s buttocks. We believe the circumstances surrounding the contact provide substantial evidence that the contact between Pearson and B.S. was of a sexual nature and constituted a "sex act" under section 702.17.

### V. *Summary.*

We conclude there was sufficient evidence to support a finding that Pearson's contact with B.S. fell within the definition of "sex act" in section 702.17. Consequently, we affirm Pearson's conviction on count four, sexual abuse in the second degree.

**AFFIRMED.**

All Justices concur except CARTER, J., who concurs in part and dissents in part, and SNELL, J., who dissents.

CARTER, Justice (concurring in part and dissenting in part).

I concur in the majority's affirmance of defendant's conviction because I conclude

that the trier of fact could reasonably have concluded that defendant performed a "sex act" on an eight-year-old child. I cannot agree, however, with the majority's criteria for determining whether "sexual contact," an essential element of a "sex act" under Iowa Code section 702.17, has occurred.

I believe that it is axiomatic that any time two persons are moving about in close proximity to one another innocent contact may occur between sexual parts. The majority recognizes this and attempts to distinguish prohibited sexual contact from innocent contact. The majority includes, as a criterion for determining sexual contact, "the purposefulness of the contact." At the same time, it disavows any requirement that there be an intent to act based on sexual gratification of either the perpetrator or the victim. The circumstances that the majority would consider in determining whether sexual contact has occurred would also be relevant to show an intent to act based on sexual gratification. However, by not recognizing sexual gratification as an element of sexual contact, the majority prohibits a defendant from attempting to negate the charge by urging lack of such intent. I believe that this is unrealistic and unfair.

SNELL, Justice (dissenting).

I respectfully dissent.

Defendant, Kris Pearson, has been convicted of three crimes of second-degree sexual abuse and has been sentenced to serve twenty-five years for each crime, concurrently. He has not appealed these convictions or sentences. The only question before this court is whether defendant was legally convicted of second-degree sexual abuse for another act as charged by the State to constitute a separate crime. I believe this conviction is in error as a matter of law.

I agree with the facts as stated by the majority but disagree with the result because it is reached by a flawed analysis. That analysis focuses on whether defendant committed an act of sex, which no one disputes, and therefore violated section 709.3(2), sexual abuse in the second degree. The focus should be on the meaning of "contact" as used in the statute.

Section 709.3(2) defines sexual abuse in the second degree as sexual abuse committed against a person under the age of twelve. Section 709.1 defines sexual abuse as a "sex act" between persons committed under circumstances described in three subparagraphs. "Sex act" is defined in section 702.17 as follows:

> The term *"sex act"* or *"sexual activity"* means any sexual contact between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 150, 150A, 151, or 152; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

In the definition the legislature has used the word "contact" five times in specifying what acts are prohibited. The "sexual contact" that is thus prohibited is specifically described separately as follows:

1. Penetration of the penis into the vagina or anus.

2. Contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person.

3. Contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a licensed person.

4. Use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

The majority never defines the word "contact" but instead undertakes to interpret the statute in terms of distinguishing acts that are sexual and those that are not. In so doing, statutory interpretation is lost in a deluge of opprobrium.

The word "contact" is defined as: 1a: union or junction of body surfaces: a touching

or meeting: ( [i.e.] cooled by contact with the air; sexual contact. Webster's Third New International Dictionary 490 (1986).

The word is defined in Webster's New World Dictionary, Second College Edition 306 (1986) as: 1. the act or state of touching or meeting ( [i.e.] two surfaces in contact).

The word "touch" is defined as:

1a: to bring a bodily part briefly into contact with so as to feel ( [i.e.] touching the delicate petals with gentle fingers);

. . .

b. to perceive or experience through the tactile sense;

. . .

5c: to have sexual intercourse with—used chiefly with real or implied negative ( [i.e.] doubt if he had ever touched a woman before his marriage.)

Webster's Third New International Dictionary at 2415.

The very nature of contact and touch belies the interpretation created by the majority that in a sexual context it can occur through layers of clothing. The contact experienced by the hockey player when surrounded by protective padding or by the fencer touched by the foil on his mask is not the type of harmful contact sought to be reached and criminalized by the words "sex act" as defined by section 702.17. A reading of the statutory description of the four types of contact that constitute a "sex act" displays the intimate personal nature of the offense. The criminal act first described as a sex act involves penetration. The contact described in the following three specified sex acts is also of an intimate, personal nature.

I believe that, applying the usually understood meaning of "contact" and as defined by Webster's Dictionary, the statutory contact required involves the touching of the victim's skin by the defendant in the commission of the offense. This meaning conforms to the measure of gravity indicated by the legislature in classifying these acts as second-degree sexual abuse and is consistent with the inclusion of the offense of penetration specified as the first example. *See* Iowa Code §§ 709.3, 702.17. A barrier of clothing is not mentioned in the statute as the equivalency of "contact," nor do I believe this to be a legislative oversight. *Id.* Since this type of contact did not occur in the instant case, the offense was not committed as a matter of law.

I do not believe the statute is ambiguous on this issue. However, if the meaning of "contact" is thought to be ambiguous, our jurisprudence is clear on the deciding principles.

The principle that "in construction of a penal statute, all reasonable doubt concerning its meaning must operate in favor of the defendant," has been repeated in thousands of judicial opinions in the Anglo–American legal world during the last two-and-one-half centuries. Application of the strict interpretation rule bears directly on the proper working of the *nulla poena* principle (no punishment without pre-existing law). *See generally* Francis A. Allen, *The Erosion of Legality in American Criminal Justice: Some Latter–Day Adventures of the Nulla Poena Principle,* 29 Arizona Law Review 385 (1987).

Iowa law has embraced this principle in numerous cases. In *State v. Koplin,* a case involving false use of a financial instrument, we said:

We are confronted here with the construction of a criminal statute. As with all statutes, when a criminal statute is plain and its meaning clear, we look no farther than the express terms of the statute. However, when ambiguities exist, criminal statutes are construed strictly with doubts resolved in favor of the defendant. This rule insures citizens will have fair warning of what actions are proscribed and can govern themselves accordingly. As a result, when charges plainly fall outside the fair scope and intent of a statute's terms, the statute will not be construed to encompass these charges even if the charges appear to fall within the reasons and policies underlying the statute.

*State v. Koplin,* 402 N.W.2d 423, 425 (Iowa 1987) (citing *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981); *State v. Soppe,* 374 N.W.2d 649, 652 (Iowa 1985); *State v. Welton,* 300 N.W.2d 157, 160 (Iowa 1981)).

In *State v. Bown*, 475 N.W.2d 3, 6 (Iowa 1991), a case involving the operation of a motor vehicle while intoxicated, we recognized the same principle. We applied the principle in deciding that a defendant had not desecrated the flag in *State v. Kool*, 212 N.W.2d 518, 520 (Iowa 1973). We said:

> We construe statutory words according to the approved usage of the language. But "[s]tatutes defining crimes are to be strictly construed and not to be held to include charges plainly without the fair scope and intendment of the language of the statute, though within its reason and policy, and in the event of doubts they are to be resolved in favor of the accused."

*Id.*, 212 N.W.2d at 520 (citing Iowa Code § 4.1(2) (1973)) (quoting *State v. Nelson*, 178 N.W.2d 434, 437 (Iowa 1970)).

*State v. Rich*, 305 N.W.2d 739 (Iowa 1981) involved a kidnapping statute. We said:

> It is well established that penal statutes must give fair warning of the conduct prohibited, and are to be construed strictly, with doubts being resolved in favor of the accused. When a statute is plain and its meaning is clear, however, courts are not permitted to search for meaning beyond its express terms.

*Id.* at 745 (citing *State v. Price*, 237 N.W.2d 813, 815 (Iowa 1976); *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978)).

In deciding constitutional issues we have referenced corollary principles. In *Price*, we said:

> Statutory language offends due process under the Fourteenth Amendment on the ground of vagueness if it does not inform a person of ordinary intelligence what conduct it forbids. A penal statute must give a person of ordinary intelligence fair warning of what is prohibited, and, in order to avoid arbitrary and discriminatory enforcement, it must provide an explicit standard to law enforcement personnel.

*Price*, 237 N.W.2d at 815.

In *State v. Baldwin*, 291 N.W.2d 337 (Iowa 1980), we held that the definition of "sex act" under the Iowa criminal code did not criminalize the touching of a woman's breast. *Id.* at 340. Defendant's conviction of committing lascivious acts with a child was reversed. *Id.* The statutory definition of "sex act" then contained almost exactly the same wording as in section 702.17 now. *Id.* at 339. We said:

> Significantly, the human breast has no part in the foregoing statutory definition of a sex act. The term "genitalia" pertains only to the reproductive organs.

*Id.* at 340. (Citing Dothar's Medical Dictionary (25th ed. 1975))

In *State v. Rodgers*, the Hawaii Supreme Court held that sexual abuse in the first degree was not committed by the defendant's touching the clothed breasts of a thirteen-year-old female. *State v. Rodgers*, 68 Haw. 438, 718 P.2d 275, 278 (1986). The statute prohibited the "touching of the sexual or other intimate parts of a thirteen-year-old with the intent of gratifying ... sexual desire." *Id.* at 276. The court said:

> Clearly, there is "touching" within the meaning of the statute if the sexual or other intimate part itself were rubbed. The touching here, however, was through the victim's clothes. Granted, the relevant language can readily be construed to include such conduct within its proscriptions. But it is subject also, as the defendant maintains, to a reading that contact with a person's clothed breasts does not constitute "sexual contact."

*Id.* at 277.

Comparing the statute to other statutes and noting that the legislature could have proscribed the touching of clothed sexual parts of a person, the court held that the statute did not embrace the offense charged. *Id.* at 278. Regarding the issue of "clothed contact" the court said:

> It is virtually self-evident that the drafters of the Penal Code could easily have spoken in clearer and more definite terms. The definition of "sexual conduct" gives evidence of the ease with which the task could have been accomplished, and we need not venture far for further proof if such were required.

Our legislature had also demonstrated its awareness of this issue by specifically referring to the touching of clothing in the crime

of indecent contact with a child, section 709.-12.

The majority's reliance on the South Dakota case of *State v. Schnaidt*, 410 N.W.2d 539 (S.D.1987) is misguided. The South Dakota statute interpreted in that case defines "sexual contact" as "touching, not amounting to rape...." *Id.* at 540 (citing S.D.Codified Laws Ann. § 22–22–7.1 (1981)). Moreover, the rule of the common law that penal statutes are to be strictly construed was abrogated by the South Dakota legislature. S.D.Codified Laws Ann. § 22–1–1.

The majority has founded its analysis largely out of a fear that a defendant could escape the meaning of the statute by using a condom or glove in committing the crime of sexual abuse. This legitimate concern, however, does not support the majority's response because our own case law already solves that problem.

In *State v. Whetstine*, 315 N.W.2d 758, 763 (Iowa 1982) we held that a finger used in perpetrating a sexual abuse came within the definition of "sex act" under section 702.17. The statutory definition now specifically includes use of a finger. Iowa Code § 702.17. It also includes use of an artificial sexual organ or substitute. *Id.*

Citing *Whetstine*, our court of appeals held that use of a hand by the defendant in committing the sex crime was included in the definition of "sex act" under section 702.17. *State v. Mueller*, 344 N.W.2d 262, 267 (Iowa App.1983). The statutory definition now also specifies use of a hand in committing a sex act. These interpretations and the present wording of section 702.17 clearly indicate that the term "sex act" would embrace a defendant's use of a condom or glove because that would constitute use of artificial sexual organs or substitutes. *See id.*

In fashioning its remedy of fairness for applying the definition of "sex act" to future factual situations, the majority has left judging in favor of legislating. A sex crime will now be determined by what third parties perceive as a touching regardless of the amount of intervening clothing or the perception of the victim. The "viewed objectively" standard would be for the purpose of determining whether the defendant's act was sex-ual in nature. At the same time a lack of sexual motivation would not necessarily bar a finding of "sexual in nature." The majority provides a list, formulated as a guide in determining whether a sexual nature was the gravamen of what occurred. Nothing in the definition of "sex act" in section 702.17 in any way suggests that the legislature intended an outreach of this sort.

By adopting a "case-by-case" basis to determine how much intervening material is necessary before sexual contact is no longer possible, the majority has fogged the distinction between law and fact. The majority pays lip service to the principle of strict statutory construction, yet abjures its application. Instead, common sense is relied on to determine both the meaning of the law and its application. But common sense, an amorphous term itself, is no substitute for a clear statement of what the law prohibits so that juries can apply it to a defendant's act. It is the responsibility of the judges to clearly state what the law is and thereby what acts are a crime. The jury, as fact finder, then determines whether the defendant did those acts declared unlawful. By mixing the two, as is now approved, juries will be rudderless vessels navigating an uncharted course without compass or lighthouse. Law will oscillate from jury to jury on waves of emotion.

There is a symmetry in law that is important to maintain. It is no less so in interpreting the criminal law. Each part should be preserved for its intended purpose and for its proper application. The majority interpretation does not square with these goals.

By construing "sexual contact" in the broadest sense, *no meaningful distinction is left* of the legislature's specification of "penetration of the penis into the vagina or anus" as a sex act. The sexual act of contact with the victim or the victim's clothing would render purposeless the specification of penetration. The former act would always supplant the latter.

It is also unnecessary and unwise to cast such a large net in interpreting section 702.-17. Other statutes have obvious application to the act committed by this defendant. Sec-

tion 709.8 criminalizes lascivious acts with a child. Indecent contact with a child, criminalized by section 709.12 includes touching the clothing covering the immediate area of the inner thigh, groin, buttock, anus, or breast of the child.

I would reverse this conviction as a matter of law for the reasons stated.