# IN THE COURT OF APPEALS OF IOWA

No. 19-1224
Filed August 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHRISTOPHER LEE IRVIN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Mills County, Richard H. Davidson,

Judge.


        Christopher Irvin appeals his convictions for sexual abuse in the third

degree and sexual exploitation by a school employee.  **AFFIRMED.**



        Christopher J. Roth of Roth Weinstein, LLC, Omaha, Nebraska, for

appellant.

        Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.



        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Christopher Irvin appeals his convictions for sexual abuse in the third degree and sexual exploitation by a school employee. Irvin contests the sufficiency of the evidence and asserts the court erred by allowing State witnesses to improperly vouch for the victim's credibility. We affirm.

## I. Background Facts & Proceedings

Irvin was an elementary school art teacher and high school cross country and assistant track coach. Irvin taught J. in elementary school art, and she ran on the middle school and high school track and cross country teams. In addition, Irvin provided J. with personal training sessions relating to running. It was not unusual for Irvin as coach to rub J.'s legs and feet during training or practice.

J. also babysat for the Irvins' child on occasion and sometimes slept on the Irvins' couch if the Irvins returned late.

In 2018, J. alleged that on two separate occasions during foot and leg massages, Irvin held her foot against his penis. The first incident occurred one spring night when J. was babysitting for the Irvins. After the Irvins returned, a movie was on, and Irvin began massaging J.'s feet. The others in the room went to bed while J. pretended to be asleep. Irvin then began to hold J.'s foot against his genitals, and then he unzipped his pants and touched her foot against his penis skin-to-skin. J. pretended to wake up. Irvin stopped the contact. J. asked him to leave the room so she could sleep, and after commenting he was not done rubbing her feet out, he did leave the room.

A second incident occurred several months later.[1] Irvin and J. were in a sauna at the gym after a workout, and Irvin again massaged J.'s feet. J. was on her phone, and Irvin again placed her foot against his genitals over his gym shorts while rubbing himself with his hand. He proceeded to massage her legs, moving in a manner that one of her legs was over his shoulder and Irvin rubbed the back and inside of her legs up to her underwear line. J. told Irvin that her mother had arrived to pick her up and left "as naturally as possible."

After the second incident, J. told friends what happened, and then her parents. J.'s family spoke with an investigator from the Iowa Division of Criminal Investigation (DCI). The DCI agent asked J. to confront Irvin while wearing a wire and using a camera phone. In the resulting recording, J. accused Irvin of taking advantage of her at his home in the spring. Irvin admitted knowing what she was talking about and apologized.

The State charged Irvin with sexual abuse in the third degree and three counts of sexual exploitation by a school employee—one count for each of the two alleged incidents and a third count for a pattern and practice of exploitation. A jury found Irvin guilty of sex abuse in the third degree and one count of sexual exploitation, which arose from the babysitting incident. The jury acquitted him on the other two charges.

Irvin appeals.

**II. Standard of Review**

"Sufficiency of evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports

---

[1] In the interim, Irvin continued as her track coach and running trainer, and J. avoided situations where she would be alone with him.

it." Evidence is substantial if, "when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." To determine whether the legislature intended to criminalize the acts of which [Irvin] is accused, we review for correction of errors at law.

*State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (citations omitted).

Evidentiary rulings are reviewed for an abuse of discretion. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). "When the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable, an abuse of discretion occurs. When a ground or reason is based on an erroneous application of the law or not supported by substantial evidence, it is untenable." *Id.* (citation omitted).

**III. Analysis**

**A. Insufficient evidence.** Irvin first claims the State's evidence is not sufficient to support a conviction for third-degree sexual abuse or sexual exploitation by a school employee. "When a defendant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine if, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt." *State v. Pearson*, 514 N.W.2d 452, 456 (Iowa 1994).

*1. Sexual abuse.* The offense of third-degree sexual abuse occurs when a person "performs a sex act . . . by force or against the will of the other person." Iowa Code § 709.4(1)(a) (2018). Irvin contends the conduct alleged does not qualify as a "sex act" under the statute.

Both allegations consisted of contact between the victim's foot and Irvin's penis. The Iowa Code defines a "sex act" as:

any sexual contact between two or more persons by any of the following:

(1) Penetration of the penis into the vagina or anus.

(2) Contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person.

(3) Contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152.

(4) Ejaculation onto the person of another.

(5) By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

Iowa Code § 702.17. The State must prove which contact occurred and the sexual nature of that contact. *See State v. Howard*, 825 N.W.2d 32, 44 (Iowa 2012). Here, the State relied on the final alternative definition of sexual contact—"[b]y use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus." Iowa Code § 702.17(5).

Irvin claims that a foot cannot be considered a substitute for a sex organ and any contact was not sexual in nature.

When Irvin raised the issue pretrial, the court denied his motion to dismiss, reasoning the sexual nature of the contact depended on the contact and surrounding circumstances, which would be fact questions for the jury to determine. Ruling on the same issue during trial in response to Irvin's motion for judgment of acquittal at the close of the State's evidence, the court ruled, "As I told both counsel prior to beginning testimony that the sexual contact determination is, in fact, a fact question. And again, the court is convinced that a reasonable juror could find in fact a sexual nature in the act that's described by the witness, [J.]."

A number of cases address similar arguments relating to hands and fingers. *See, e.g., State v. Whetstine*, 315 N.W.2d 758, 761 (Iowa 1982) ("We agree that

a finger is a substitute for a sexual organ in the present case. It may also be considered as a substitute for an artificial sexual organ. Such an interpretation is just and reasonable."). At the time *Whetstine* was decided, section 702.17 (1979) provided:

> The term "sex act" or "sexual activity" means any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

The Iowa legislature amended section 702.17 in 1989, further defining a sex act by specifying that "[c]ontact between the finger or hand of one person and the genitalia or anus of another person" constituted a sex act. The bill's explanation stated,

> This bill expands the definition of "sex act" or "sexual activity" by including contact between the finger or hand of one person and the genitalia or anus of another person. Under current law, such acts do not constitute sexual abuse, or certain other criminal acts unless the act meets other statutory requirements such as being offensive or performed for the purpose of arousal.

S.F. 201, 73d Gen. Assemb. (Iowa 1989). The legislative explanation implies other physical contact between a body part of one person and the genitalia or anus of another can constitute a sex act if the contact meets the other statutory requirements.

The logic of *Whetstine* applies equally to sexual contact using a foot instead of a hand or fingers. *See* 315 N.W.2d at 761. A foot-to-genitals contact can be considered a sex act if the contact is of a sexual nature. *See Pearson*, 514 N.W.2d at 455 ("Not all contact is a 'sex act.' The contact must be between the specified body parts (or substitutes) and must be *sexual* in nature."). "The sexual nature of

the contact can be determined from the type of contact and the circumstances surrounding it." *Id.*

Viewing the evidence in the light most favorable to the State, *see id.* at 456, we agree with the district court that a reasonable juror could find the contact as described by J. to be sexual in nature.

*2. Sexual exploitation by a school employee.* As for the sexual-exploitation-by-a-school-employee conviction, Irvin contends insufficient evidence supports a finding of sexual gratification. The misdemeanor offense of sexual exploitation by a school employee occurs when the following is found:

> Any sexual conduct with a student for the purpose of arousing or satisfying the sexual desires of the school employee or the student. Sexual conduct includes but is not limited to the following:
> (a) Kissing.
> (b) Touching of the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals.
> (c) A sex act as defined in section 702.17.

Iowa Code § 709.15(3)(a)(2) (2018). The listed conduct is specified to be a non-exclusive list—any sexual conduct intended to arouse or satisfy either party's sexual desires fulfills the statute's requirements. *See Wickes*, 910 N.W.2d at 566 (holding under some circumstances, hugs between a teacher and student that go beyond reassurance, comfort, or congratulations can fall within "sexual conduct" for purposes of section 709.15).

Considering J.'s testimony and Irvin's statements in the recording played at trial, a reasonable juror could find that Irvin engaged in sexual conduct—massaging J.'s feet and legs—for the purpose of arousing himself.

*3. Credibility.* Irvin also challenges J.'s credibility.

"In our system of justice, it is the jury's function to determine the credibility of a witness." *Dudley*, 856 N.W.2d at 677. It is for the jury to determine the effect of inconsistencies on the credibility of a witness. *State v. Romeo*, 542 N.W.2d 543, 549 (Iowa 1996). Discrepancies in testimony do not necessarily render a victim's testimony unbelievable. *State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999).

Irvin cross-examined J. regarding inconsistencies in her statements. Irvin also offered text-message evidence impeaching J. on the matters. Being informed of the alleged inconsistencies, the jury considered the testimony and found Irvin guilty of two of the four charged offenses. Viewing the evidence in the light most favorable to the State, we conclude substantial evidence supports the jury's verdicts.

**B. Improper vouching testimony.** Irvin next asserts two of the State's witnesses—the investigating DCI agent and the forensic interviewer—improperly vouched for the complaining witness. The State counters Irvin did not preserve error on this claim, and even if preserved, the agent was a fact witness, not an expert, and the forensic interviewer's testimony did not vouch for J.

An expert witness "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Iowa R. Evid. 5.702. A "witness's credibility 'is not a "fact in issue" subject to expert opinion.'" *Dudley*, 856 N.W.2d at 676 (citation omitted). "Expert testimony in child sexual abuse cases can be very beneficial to assist the jury in understanding some of the seemingly unusual behavior child victims tend to display." *Id.* at 675. "[T]here is

a very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible." *Id.* at 677; *see also State v. Leedom*, 938 N.W.2d 177, 192 (Iowa 2020) ("Experts may express general opinions but may not directly comment on the veracity of the child victim."). "[E]xpert testimony is not admissible merely to bolster credibility." *Dudley*, 856 N.W.2d at 676.

The DCI agent's testimony Irvin describes as "vouching" by an expert related to the second alleged incident. The agent viewed security footage of the day of the incident,[2] and described J.'s actions and demeanor upon leaving the gym sauna. In the challenged testimony, the agent described J.'s demeanor:

> Q. Again, what was her demeanor, or what did you observe when she exited the sauna? A. So again, her eyes were wide open, and she was just moving at a very quick pace. She didn't—like, she just went and grabbed her stuff and walked out. She didn't say goodbye to the little girl, she didn't go to the bathroom and change, she didn't do anything. She grabbed her stuff and was straight out the door.

The agent had earlier testified that before going in the sauna, J.'s expression "was just normal, she wasn't happy, she wasn't sad, just, like, got done with a workout."

A fact witness's testimony is limited to an opinion "based on the witness's perception," that helps the jury understand the witness's testimony or in "determining a fact in issue," and is not based on specialized knowledge. Iowa R. Evid. 5.701. This court has allowed testimony where an officer describes what is observed, as long as the officer does not give an opinion whether the observed person is telling the truth or lying, instead leaving to the jury to interpret what the observation means. *State v. Garcia-Miranda*, No. 05-1870, 2007 WL 1345848, at

---

[2] Irvin offered several segments of gym surveillance video as evidence.

*7 (Iowa Ct. App. May 9, 2007). Here, the agent's testimony recounted his observations, and it did not involve any opinion, suspicion, or action based on the agent's training and experience. The agent's observations were factual in nature and did not involve an expert opinion or vouching.

Irvin challenges the following testimony of the forensic interviewer as improper:

> Q. In your experience and training, are there reasons why children still have contact with their abusers? A. Yes. So as I mentioned, a lot of the times the child knows the offender, whether it's a family member or somebody that's close to them in some other capacity. So there's—What I see when I talk with children, there's often continual contact that happens.

"We allow an expert witness to testify generally that victims of child abuse display certain demeanors." *State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014). Here, the interviewer did not discuss her interview with J. or make any comment on J.'s demeanor or the continued coaching relationship with Irvin. The forensic interviewer's statement that children often continue to have contact with their abuser does not constitute impermissible vouching for J.'s credibility.

**AFFIRMED.**