# IN THE COURT OF APPEALS OF IOWA

No. 19-0733

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EARL BAUGH III,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Thomas Reidel, Judge.

A defendant appeals his conviction for burglary in the first degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

Earl Baugh III appeals after a jury found him guilty of burglary in the first degree, assault causing bodily injury, and going armed with intent. Baugh argues because the jury returned a general verdict, his conviction should be overturned if there is not sufficient evidence to support any one of the three methods of committing first-degree burglary submitted to the jury. Although we find there is insufficient evidence to show Baugh engaged in a sex act with the victim as the term is statutorily defined, we decline to reverse Baugh's first-degree burglary conviction. Though general verdicts often leave appellate courts to guess which of several theories the jury accepted, this case marks an exception. Because the jury also found Baugh guilty of going armed with intent and assault causing bodily injury, we are able to determine the jury relied on the two alternatives supported by substantial evidence.

## I.      Background Facts & Proceedings

Baugh was in an intimate relationship with R.G. that ended in January 2018. On June 24, 2018, at about 3:00 a.m., Baugh came to R.G.'s home and started banging on the windows and doors, first at the front door and then at the back door. The noise awakened R.G. and her three children. R.G. indicated through the window to Baugh that she was not going to let him in and returned to her bed. The pounding continued for a time and then stopped. When the pounding stopped, R.G. got out of bed for a second time and saw Baugh walking into her home, as R.G.'s eleven-year-old son had opened the door. Baugh said he wanted to talk to R.G. She refused and asked him to leave. R.G. perceived that Baugh was drunk.

When R.G. indicated that she did not want to talk, Baugh's behaviors quickly escalated. Baugh made R.G. go into her daughters' room, where he pushed R.G. onto the bed and slapped her face. R.G. started yelling. Baugh kept hitting R.G. R.G.'s children attempted to intervene and asked Baugh to stop. R.G. tried to hand her cell phone to her son, but Baugh slapped the phone out of her hand.

Baugh took R.G. to her bedroom, where he ordered her to lay down. He ripped off her pants and removed his pants. Baugh held a knife to R.G.'s stomach. He told R.G. that she was going to have sex with him. She stated she felt Baugh's penis on her leg. She put her hand inside her vagina so Baugh could not penetrate her. R.G. stated Baugh eventually gave up and left the home.

R.G. was unable to find her cell phone until the next morning. She and the children went to a birthday party during the day. R.G. called the police at approximately 5:23 p.m. on June 24. An officer took pictures of R.G.'s injuries. She had a cut on her arm and bruises on her body. An officer testified R.G. appeared to have bruises from being restrained.

Baugh was charged with burglary in the first degree, assault with intent to commit sexual abuse, and going armed with intent. At the jury trial, R.G. and two of her children were among the State's witnesses. Baugh testified he did not remember where he was on June 24 but he did not go to R.G.'s house. Baugh's coworkers testified that Baugh was at work on June 24 by 6:00 a.m. They stated he did not smell of alcohol or seem intoxicated.

A jury found Baugh guilty of first-degree burglary, assault resulting in bodily injury, and going armed with intent. The district court concluded the convictions for assault causing bodily injury and going armed with intent merged into the

conviction for first-degree burglary, in violation of Iowa Code section 713.3 (2018). Baugh was sentenced to a term of imprisonment not to exceed twenty-five years on April 25, 2019. He now appeals.

## II. Discussion

Baugh claims there is not sufficient evidence in the record to support his conviction for first-degree burglary. To convict a defendant of burglary in the first degree, the State must prove one of the four circumstances in section 713.3(1) applies.[1] Based on the facts of the case, the jury was instructed the State needed to prove Baugh could have committed burglary under one of the three following methods: (1) "[T]he defendant possessed a dangerous weapon"; (2) "[T]he defendant intentionally or recklessly inflicted bodily injury on R.G."; or (3) "The defendant performed or participated in a sex act with R.G. which would constitute sexual abuse." See Iowa Code § 713.3(1)(b)–(d).

Baugh states that because the jury returned a general verdict, his conviction should be overturned if there is insufficient evidence to support any one of the three methods of committing first-degree burglary. *See State v. Williams*, 674 N.W.2d 69, 71 (Iowa 2004) ("We have recognized, however, if the instructions allow the jury to consider multiple theories of culpability, only some of which are

---

[1] These four circumstances are as follows:

a. The person has possession of an explosive or incendiary device or material.
b. The person has possession of a dangerous weapon.
c. The person intentionally or recklessly inflicts bodily injury on any person.
d. The person performs or participates in a sex act with any person which would constitute sexual abuse under section 709.1.

Iowa Code § 713.3(1).

supported by the evidence, and a general verdict of guilty is returned, a reversal is required because 'we have no way of determining which theory the jury accepted.'" (citation omitted)).

Baugh contends there is not sufficient evidence to show he committed a sex act, the only alternative he challenges on appeal. "[W]e must determine whether the evidence was sufficient to sustain guilt under the theory that [he] has elected to challenge." *Williams*, 674 N.W.2d at 71.

The term "sex act" is defined as any sexual contact between two or more persons, as follows:

> 1. Penetration of the penis into the vagina or anus.
> 2. Contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person.
> 3. Contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152.
> 4. Ejaculation onto the person of another.
> 5. By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

Iowa Code § 702.17. It is not necessary that there be skin-to-skin contact in order to establish a "sex act." *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). The contact "must be *sexual* in nature." *Id.*

R.G. testified Baugh "was basically just trying to make me have sex with him, and I just kept saying no." She stated, "I had my hand inside of my vagina so that he couldn't penetrate to actually have sex with me, and he didn't, but he was trying." In response to a question as to whether she ever felt any part of his body on her body, R.G. stated, "Yeah, his penis was on my leg, so I had my hand where

I had it." She added, "He finally just gave up. He just—I mean, he tried and tried and tried, and basically like tried to make me, but then he just gave up."

We agree with Baugh's argument that the evidence presented during the jury trial was insufficient to show he engaged in a sex act with R.G. The evidence shows only contact between Baugh's genitals and R.G.'s leg, which does not meet the statutory definition of a sex act. *See* Iowa Code § 702.17. Although R.G. was called to testify, no testimony was elicited from her concerning contact that would fit the definition of a sex act contained in Iowa Code section 702.17.

As a matter of common law, Iowa appellate courts have chosen to reverse a general verdict and remand for a new trial if "we have no way of determining which theory the jury accepted."[2] *Tyler*, 873 N.W.2d at 754 (quoting *State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996)). But only when "circumstances make it impossible for the court to determine whether a verdict rests on a valid legal basis or on an alternative invalid basis," do we assume the verdict is based on the invalid ground. *State v. Lathrop*, 781 N.W.2d 288, 297 (Iowa 2010). In that vein, *State v.*

---

[2] On general verdicts, our supreme court has historically taken a position contrary to that announced in *Griffin v. United States*, 502 U.S. 46, 60 (1991). *See State v. Tyler*, 873 N.W.2d 741, 754 (Iowa 2016). *Griffin* held that a general verdict need not be set aside merely because one possible ground for conviction was unsupported by sufficient evidence. 502 U.S. at 56. However, in 2019, the Iowa legislature essentially adopted the *Griffin* holding. *See* 2019 Iowa Acts ch. 140, § 32 (codified at Iowa Code § 814.28 (Supp. 2019)). That new law provides:

> When the prosecution relies on multiple or alternative theories to prove the commission of a public offense, a jury may return a general verdict. If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.

Iowa Code § 814.28.

*Shorter* recognized that "limited" situations exist when a general verdict may be upheld even if the district court submitted an unsupported theory to the jury. 893 N.W.2d 65, 76 (Iowa 2017) (distinguishing *Smith*, 739 N.W.2d at 294, where the general verdict left the appellate court with no way of knowing whether the jury convicted based on an unsupported joint-criminal-conduct theory). If an appellate court can tell from the context of the entire case that the jury did not rely on the faulty alternative, "retrial is not required." *See id.* (citing *State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) (holding erroneous submission of joint-criminal-conduct instruction did not require reversal because the jury could not have found defendant guilty on anything other than his conduct as a principal or as an aider and abettor)).

Like the resolution in *Shorter*, retrial is not required on Baugh's first-degree-burglary conviction because we can tell the jury relied on the two enhancing elements supported by substantial evidence. From the other two verdicts following Baugh's trial, we know the jury found the State proved beyond a reasonable doubt that during the incident (1) he possessed a dangerous weapon and (2) he inflicted bodily injury on R.G. The first finding flows from the jury's verdict convicting Baugh of going armed with intent, which included the element that he was armed with a dangerous weapon. *See* Iowa Code § 708.8. The second finding flows from the jury's verdict convicting Baugh of assault causing bodily injury.[3] *See id.* § 708.2(2).

---

[3] In the State's closing argument, the prosecutor described the conduct constituting the assault as the same conduct constituting the enhancing element of the burglary and pointed to testimony that R.G. received her injuries when Baugh was "putting his knife to her stomach" and "holding her down." In acquitting Baugh of assault with intent to commit sexual abuse, the jury rejected the prosecutor's argument

In finding Baugh guilty of the lesser-included assault offense, the jury acquitted Baugh of the greater offense of assault with intent to commit sexual abuse. *See id.* § 709.11. The verdicts on these other counts pull back the curtain on the general verdict for first-degree burglary. As a practical matter, these verdicts serve as special interrogatories, verifying that the jurors relied on the alternatives that *were* supported by substantial evidence.

Defense counsel's argument for merger at the sentencing hearing highlights this point:

> My argument is that for burglary in the first degree in this case, element 6 obviously would require that either under subparagraph A, possessed a dangerous weapon; or, under subparagraph B, he inflicted violent injury; or, C, participated or performed a sex act. Obviously, under subparagraph C he was found not guilty of the sex act and was found guilty of the lesser-included, which means that if the jury found him guilty under subparagraph A, I believe it would merge with Count 3 because they did find him guilty of the dangerous weapon. If they found him guilty under burglary first degree because of subparagraph B, inflicting the bodily injury, then I believe Count 2 should merge. Because they found him guilty of both Count 2 and Count 3, I think it's clear that they found under burglary one that both 6A and 6B apply because they clearly found him guilty of both of things.

In response, the prosecutor did not contest Baugh's underlying premise that the jury rejected the sex-act alternative. Instead, the prosecutor argued: "We don't know whether they found this to be burglary in the first degree because of the weapon or because of the injury or a combination of both." In its sentencing order, the court adopted Baugh's position: "[U]nder the circumstances of this case Counts 2 and 3 both merge with Count 1."

---

that when Baugh's "penis [was] near the other person's vagina," he was attempting to commit a sex act.

Baugh also argues the district court wrongly denied his request to offer the prior testimony of a neighbor. Baugh claims the neighbor was unavailable for trial, so a transcript of his deposition was admissible under Iowa Rule of Evidence 5.804(a). However, Baugh did not preserve error on this issue. Even if the court erred in excluding the neighbor's deposition, we cannot evaluate whether the error was prejudicial because Baugh did not make an offer of proof. Defense counsel described the neighbor's testimony as "crucial" to Baugh's case. However, counsel never offered a copy of the deposition to verify that description. Without the deposition in the record, Baugh did not properly preserve the issue for our review.

**AFFIRMED.**