**IN THE COURT OF APPEALS OF IOWA**

No. 24-0052
Filed June 5, 2024

**IN THE INTEREST OF K.H.,**
**Minor Child,**

**A.H., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, Judge.

        A mother appeals termination of her parental rights. **AFFIRMED.**

        Jane M. Wright, Forest City, for appellant mother.

        Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

        Becky Wilson of Becky E. Wilson, Attorney, PLLC, Iowa Falls, attorney and guardian ad litem for minor child.

        Considered by Greer, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The mother appeals termination of her parental rights to K.H. (born 2012). Her main complaint focuses on whether the Iowa Department of Health and Human Service (HHS) made reasonable efforts toward reunification when there were no in-person visits in the lead-up to termination. We affirm.

HHS first became involved with this family in February 2022 based on reports regarding the mother's suspected use of marijuana and methamphetamine. The mother was resistant to drug testing but eventually tested positive for both substances. When the HHS worker presented the mother with the results document, the mother "wadded it up and threw it in the driveway and then left." HHS workers observed multiple physical or behavioral indicators of the mother's drug use during this conversation and later interactions. The child, in her conversation with an HHS worker, also shared concerns about the mother using drugs and described where drugs were in the home. And the mother admitted having a substance-abuse history and ongoing problems. Despite this partial recognition, in her meetings with providers the mother was "very much in denial, very argumentative"—saying things like "I don't have a f-in' problem, this is BS." HHS removed the child and placed her in her father's custody, where she remained as of trial.

Early in the case, the mother declined visitation and suggested at one point she instead wanted to focus on treatment. At adjudication, the only additional services the mother requested were background checks on certain individuals and visits at the mother's apartment once approved by HHS. No party objected to

those requests.  And before a December 2022 review hearing, the mother filed a motion for reasonable efforts, seeking in-person visitation.

Earlier that fall, the child disclosed to others and eventually her therapist that she had been sexually abused on different occasions by a family member and the mother's paramours.  At the review hearing, the therapist opined that it was not "safe or appropriate" for the child to have contact with the mother because the mother (in the therapist's words) "doesn't believe" the child and thought the child was "a liar [and] made all this up . . . or dad told her to say this."  The therapist explained, "[I]f mom who is suppose[d] to have a protective capacity as a parent cannot demonstrate empathy for her daughter and validate her trauma, it's hard to imagine how a relationship can move forward."  And the therapist told the court the child said she did not want to have visitation with the mother, at least for the time being, because it reactivated her trauma.  The child reported to family service workers the mother made her feel "bad and uncomfortable," and she reported having flashbacks to the abuse.

HHS ultimately could not confirm reports of the paramours' abuse—but not because the child wasn't credible; there wasn't enough information about the perpetrators' identities to investigate and a worker erroneously believed the child's report a man touched her genitals through clothing did not qualify as sexual abuse.[1]  HHS also did not confirm the report about the family member, partially because an HHS worker who investigated years prior thought the child may have

---

[1] The supreme court held thirty years ago in *State v. Pearson*, 514 N.W.2d 452, 456 (Iowa 1994), that touching genitals through clothing can be criminal sex abuse.

been coached. Unlike the mother's response, the child's father was "flabbergasted" when he learned the extent of the past sexual abuse.

At a combined disposition and reasonable-efforts hearing, an HHS worker testified that the child was "adamantly refusing to have any contact with mom" despite HHS encouraging her to resume visitation. The worker described a sudden change in the child's demeanor whenever the topic was broached and how the child might be willing to attempt contact in the future but wasn't ready now. The worker opined that she did not think it would be appropriate for the department to force contact or visitation when the child felt unsafe. The child's guardian ad litem (GAL) offered a similar recommendation: that contact between the mother and child would not be safe or healthy now, but it would be good to work toward contact in writing and rebuilding an in-person relationship through therapy. The court denied the reasonable-efforts motion and continued placement of the child with the father.

The mother made some progress with therapy and other services and wrote to the child. The child responded by letter but was still unwilling to have in-person contact with the mother, despite HHS encouraging it. According to the worker, the child was "very firm" in her view and consistent. The child was also upset that the mother still denied or wouldn't acknowledge the sexual abuse. The child's therapist did not believe family therapy was appropriate at that point.

The child began acting out, briefly ran away, and was placed at a psychiatric facility. The mother filed another motion with the juvenile court claiming a lack of reasonable efforts and seeking records from the child's treatment. The juvenile court chastised HHS for not timely notifying the mother of the placement but denied

the reasonable-efforts motion because the placement did not affect whether the child could be returned to the mother's care or custody. The juvenile court also granted the mother's request for access to the records.

At the termination trial, the mother testified she had addressed her issues with substance abuse and mental health. But she still did not credit the child's reports of sexual abuse, saying she agreed the child thought something happened but denied that anything happened in the mother's care. She also acknowledged the therapists told her it harmed the child when she did not acknowledge the abuse, and some of the abuse the child reported took place while the mother was using methamphetamine. The mother had earlier text-messaged a worker that HHS needed to either "prove [the child's] story or drop the case" and "I got a life right and right now I'm doing fine so either get y'all shit together or dismiss the shii." (It was unclear whether the mother was commenting on "dismiss[ing]" the juvenile cases generally or the sexual-abuse investigation specifically.) In another message, the mother told a worker, "y'all don't have no evidence just the word of a scared child."

Consistent with recommendations by the child's therapist and the child's wishes, the mother had not seen the child in-person for more than a year before termination. The therapist had also recommended the mother stop writing letters to the child—he thought they were doing more harm than good because the mother would not acknowledge the abuse—and the mother followed the recommendation to stop writing.

Over the life of the case, the child regularly attended school and continued to progress in therapy and work toward addressing residual trauma despite some

mental-health setbacks. By all accounts, and despite a rough start, the father cared for her well.

At trial, the county attorney, HHS, and GAL all recommended termination of the mother's parental rights. The juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(e) and (f) (2023). The mother appeals, and we review de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Reasonable efforts and visits.** The mother's first and primary challenge to termination is grounded in a reasonable-efforts complaint about HHS not compelling the child to have in-person visits with the mother. *See* Iowa Code § 232.102A(1)(a). But "the nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). We have explained before that, "if services aimed to remove the risk responsible for limited visitation have not met their objective, then increased visitation would not be in the child[ ]'s best interests." *In re J.C.*, No. 23-0729, 2023 WL 5605337, at *2 (Iowa Ct. App. Aug. 30, 2023). And the supreme court has explicitly recognized the harm caused to children when parents refuse to acknowledge the child was sexually abused. *See In re D.D.*, 955 N.W.2d 186, 193–94 (Iowa 2021) ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").

We do not fault HHS for declining to physically drag a preteen child to visits with a mother who refused to acknowledge the child was sexually abused while in her care. This conclusion is partially informed by the mother's unwillingness to address the possibility the abuse happened in her care while she was under the influence of methamphetamine. We also recognize that the visitation restriction

has been guided by therapeutic recommendations and HHS continued to encourage the child to attend in-person visits nonetheless. We conclude HHS's efforts here were reasonable. *See In re S.P.*, No. 16-1919, 2017 WL 108798, at *4–5 (Iowa Ct. App. Jan. 11, 2017).

**Issue regarding unfounded assessments.** The mother's second complaint is difficult for us to conceptualize within the framework of chapter 232. She alleges that HHS combined unconfirmed assessments into a new allegation that was founded against the mother. The only legal authorities the mother cites for this claim concern reasonable efforts. Forced to choose between crafting a legal argument for the mother of our own versus finding it waived, we must conclude there is no claim properly before us. *See* Iowa Rs. App. P. 6.201(1)(d), .1401 Form-5; *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) ("Our rules state a petition on appeal from a termination proceeding must comply with the form provided, which instructs petitioners to provide the court with references to supporting legal authority. Because the mother has not provided any legal authority to support her arguments on appeal, we deem the issues waived.").

To the extent the mother intended an administrative challenge to the assessment, as the State posits in its response on appeal, that claim is not properly before us absent exhaustion under chapter 17A. *See* Iowa Code § 235A.19(3)(b). We summarily reject any such challenge. And to the extent we might construe the argument in the petition as a challenge to the juvenile court's fact-findings, we note the HHS worker's testimony: "[W]ith regard to the sexual abuse, [the child's] consistent allegation is that mom knew and didn't do anything about it. And didn't

protect her." The GAL similarly observed that the child consistently described the abuse "to every person providing treatment and services throughout this case" and the mother "has not [wavered] in her denial that anything could have happened to [the child] while in [the mother's] care or the care of anyone [the mother] had near or around [the child]." In discussing the child's reports of abuse and linking them to the mother's failure to provide for the child's welfare and safety, we find the juvenile court implicitly credited the child's reports of sexual abuse, and we decline to disturb that finding on appeal. *See W.M.*, 957 N.W.2d at 312 (noting we give "respectful consideration" to juvenile-court fact findings, especially on credibility).

**Issue regarding mother's drug use.** The mother's last contention focuses on the juvenile court's finding that "[t]here are concerns for [the mother]'s drug use" based in part on the mother's admissions. She takes umbrage at this because she was not tested regularly, she completed a substance-abuse evaluation, and there was apparently no recommendation for further treatment. On this issue, the mother cites no legal authority, and we again find she waived her claim. *See* Iowa Rs. App. P. 6.201(1)(d), .1401 Form-5; *K.D.*, 2021 WL 3897419, at *2. But even if properly briefed, we see no basis for reversal. While the juvenile court received evidence on the evaluation not recommending further treatment, it also received an assessment recommending continuing care. The court was free to credit concerns about drug abuse expressed by HHS, the child, and the mother herself. We decline to disturb the court's assessment of credibility and assignment of weight to the evidence. *See W.M.*, 957 N.W.2d at 312.

**AFFIRMED.**